**UNITED STATES of America, Appellee,**

v.

**Robert J. VESAAS, Appellant.**

**No. 78–1354.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 14, 1978.

Decided Nov. 13, 1978.

Jack S. Nordby of Thomson & Nordby, St. Paul, Minn., for appellant.

Donald F. Paar, Asst. U. S. Atty., Minneapolis, Minn., argued, and Andrew W. Danielson, U. S. Atty., and Richard E. Vosepka, Jr., Asst. U. S. Atty., Minneapolis, Minn., on brief, for appellee.

Before LAY, BRIGHT and ROSS, Circuit Judges.

LAY, Circuit Judge.

Robert J. Vesaas was convicted under 18 U.S.C. § 1001 for making false statements under oath during a deposition taken by the United States Attorney.[1] In 1972 defendant personally guaranteed a $250,000 Small Business Administration loan made to a small corporation formed by a group of his friends. The company failed after five months and the government obtained a default judgment against defendant for the amount of the loan in October 1976. Mr. Vesaas had held a number of stocks in joint tenancy with his mother. In August of 1977 his mother died, and thereafter Mr. Vesaas liquidated all this corporate stock except for 126 shares of Pacific Power and Light. On November 8, 1977, defendant's deposition was taken by the United States Attorney in a supplementary proceeding in aid of execution of the government's judgment against him. Mr. Vesaas' responses to questions concerning his assets formed the basis for his indictment and subsequent conviction.

On appeal Vesaas contends that: (1) the indictment fails to state an offense; (2) there existed a fatal variance between the indictment and the proof; (3) the evidence was insufficient to sustain a verdict; (4) the trial court improperly instructed the jury; (5) improper comments were made by both the trial judge and the prosecutor; (6) the trial judge erroneously prohibited trial counsel from conferring with his client during a trial recess; (8) there was improper communication with a juror; and (9) trial counsel rendered ineffective assistance. We vacate the judgment of conviction and remand to the district court with directions to dismiss the indictment.

■ Although it is not necessary for us to pass on all of the many challenges made to the trial proceeding, we are frank to observe there exists substantial merit in most of the contentions made on appeal.[2] There exists on the record a total insufficiency of proof to sustain the conviction. In addition, the trial court, perhaps sensing the futility of the proof, further compounded the error by instructing the jury that they could convict the defendant for false statements that were not charged in the indictment.[3] For reversal, however, we need

---

1. Section 1001 reads as follows:
 Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

2. During cross-examination of Mr. Vesaas the trial court stated: "All right, now let's take a recess. And don't you talk with your lawyer about these questions and answers during the recess." Although there is no indication in the record concerning the exact duration of the recess, it is clear that it was not overnight. Nevertheless, we have grave doubts that even a brief restriction on a criminal defendant's right to confer with counsel can be squared with the Sixth Amendment. See Geders v. United States, 425 U.S. 80, 91, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976); United States v. Bryant, 545 F.2d 1035, 1036 (6th Cir. 1976); United States v. Allen, 542 F.2d 630, 634 (4th Cir. 1976), cert. denied, 430 U.S. 908, 97 S.Ct. 1179, 51 L.Ed.2d 584 (1977). In addition, the record is replete with improper statements and interruptions by the trial judge in the trial of the case. Typical among the many prejudicial comments, for example, was the following statement to the defendant's attorney before the jury:

 I would wonder how a lawyer could sit there and have his client give answers he knew were wrong. . . . What's the lawyer's responsibility to straighten out his client?

 Furthermore, the trial court interrogated the prosecutor before the jury and allowed him to make prejudicial comments throughout the trial. For example the prosecutor openly stated during the progress of the trial:

 And the answers . . . are lies; and there are numerous examples . . . within . . . the transcript.

3. Although the indictment charged that Vesaas violated § 1001 by falsely denying joint ownership of stock with his deceased mother, a considerable portion of the evidence introduced at trial and the jury instructions focused on whether or not Vesaas lied concerning his sole ownership of certain stock. When instructing the jury the trial judge stated as follows:

 That's really—for all of the whole case you've heard, narrows down to that question: "Did he know that the Pacific Electric stock

only to start and finish where the error commenced; to-wit, the incoherent indictment.

The indictment charged:

On or about the eighth day of November, 1977, in the District of Minnesota, the defendant,

ROBERT J. VESAAS

wilfully and knowingly did make and cause to be made false, fictitious and fraudulent statements and representations as to material facts in a matter within the jurisdiction of the United States Department of Justice, an agency of the United States, in that the defendant made statements under oath during a discovery examination pursuant to Rules 26 and 69(a), Federal Rules of Civil Procedure, in which *he represented that he did not know of any stocks, bonds or other property owned by his deceased mother and himself in joint tenancy,* whereas in truth and fact, as he *then* well knew, the defendant and his deceased mother *held* joint tenancy ownership rights in the stock of several companies, including 459 shares of Minnesota Gas Company, 273 shares of American Hoist and Derrick Company and 126 shares of Pacific Power and Light Company, and that subsequent to his mother's death on August 25, 1977, the defendant had sold the aforestated shares of stock of Minnesota Gas Company and American Hoist and Derrick Company during October, 1977; and that the aforestated shares of Pacific Power and Light Company were, at the time of his sworn statement, held for his account by the brokerage firm of Thrift Trading, Incorporated; such representations being in violation of Title 18, United States Code, Section 1001. (Emphasis added.)

 The obvious difficulty with the wording of the indictment, as the government concedes, is that a person can never own property in joint tenancy with a deceased person. The indictment reads "as he *then* well knew, the defendant and his deceased mother held joint tenancy ownership rights in the stock of several companies. . . ." The government urges that it intended to charge the defendant with falsely denying that he owned any stock in joint tenancy with his mother during her lifetime. Unfortunately, it did not do so. The representation allegedly made by the defendant "that he did not know of any stocks, bonds or other property owned by his deceased mother and himself in joint tenancy" cannot constitute a false statement since it is legally impossible to be a joint tenant with a decedent. The indictment alleges that Vesaas' mother died on August 25, 1977, and that the defendant then (presumably at the time of the deposition) knew he owned shares in joint tenancy with her. But then, in direct contradiction, it alleges that the defendant sold the aforesaid stock *before the deposition* except for the Pacific Power & Light shares held for his account. It is extremely difficult for this court to discern from the plain wording of the indictment how the alleged representations are false.[4]

The government urges, however, that no challenge to the indictment was advanced by the defendant prior to this appeal and therefore all defenses and objections to the indictment other than the defenses that the

---

had not been sold and that he had not given the proceeds to his son and thus it was still in his name?"

This instruction allowed the jury to find Vesaas guilty for an offense other than the one he was indicted for. Such a variance would render defendant's conviction fatally defective since the indictment cannot be fairly read as charging defendant with lying about his sole ownership of stock. Such a substantial variance clearly contravenes the Fifth Amendment's requirement that federal felony prosecu-

tions be commenced by indictment. *See Stirone v. United States,* 361 U.S. 212, 215–19, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960).

4. It is fundamental that an indictment must contain the elements of the offense charged *and fairly inform the defendant of the charge in* order that he may defend against it. *See Hamling v. United States,* 418 U.S. 87, 117- 18, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *United States v. Brown,* 540 F.2d 364, 371 (8th Cir. 1976).

court lacks jurisdiction or that the indictment fails to state an offense are waived. Fed.R.Crim.P. 12(b)(2). The difficulty here, however, is that the indictment is not only self-contradictory, but also sets forth as the alleged false statement the defendant's denial of a legal impossibility. We have previously stated:

> [A]n indictment "will ordinarily be held sufficient unless it is 'so defective that by no reasonable construction can it be said to charge the offense for which the defendant [was] convicted.' *Muench v. United States,* 96 F.2d 332, 335 (8th Cir. 1938)."

*United States v. Ivers,* 512 F.2d 121, 123 (8th Cir. 1975).

It is doubtful that even an individual possessed with a trained lexical insight could decipher what the government actually had in mind. The criminal perjury statutes were not intended to encompass confusing and ambiguous questions. The government urges that the representations within the indictment should be construed so as not to state a legal impossibility. However, a prosecution for a false statement under § 1001 or under the perjury statutes cannot be based on an ambiguous question where the response *may* be literally and factually correct. *Bronston v. United States,* 409 U.S. 352, 366, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973). *Accord, United States v. Lozano,* 511 F.2d 1, 5 (7th Cir.), *cert. denied,* 423 U.S. 850, 96 S.Ct. 94, 46 L.Ed.2d 74 (1975); *see also United States v. Anderson,* 579 F.2d 455, 460 (8th Cir. 1978); *United States v. Steinhilber,* 484 F.2d 386, 389–90 (8th Cir. 1973); *United States v. Diogo,* 320 F.2d 898, 907 (2d Cir. 1963). An indictment premised on a statement which on its face is not false cannot survive.

In our judgment no reasonable construction of the indictment can salvage it. As the Supreme Court has stated in a related context:

> It may well be that petitioner's answers were not guileless but were shrewdly calculated to evade. Nevertheless, . . . any special problems arising from the literally true but unresponsive answer are to be remedied through the "questioner's acuity" and not by a federal perjury prosecution.

*Bronston v. United States,* 409 U.S. 352, 362, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973).

We conclude that the indictment is fatally defective in failing to set forth an offense under § 1001.

There is no need to encumber this opinion by setting forth the various questions and defendant's alleged false responses in the deposition. Suffice it to say the questions propounded are as confusing as the indictment. These same questions obviously led to the confusing and ambiguous charge that at the time of the deposition the defendant falsely denied that he held stock in joint ownership with his deceased mother. Thus assuming that we could by some stretch of the imagination uphold the validity of the indictment we would still be compelled to find that the evidence is clearly insufficient to sustain a conviction under § 1001. In each instance the questions asked were leading and brought forth general "yes" and "no" answers. In commenting upon a similar prosecution under the grand jury perjury statute, 18 U.S.C. § 1623, we cautioned:

> The prosecutor's interrogation of Boberg before the grand jury consisted almost entirely of leading questions. The indictments rest upon Boberg's somewhat cryptic responses to those questions. This kind of interrogation always creates a great risk that the witness will misunderstand the questions or that the prosecutor will put words in the witness' mouth. We think that a grand jury witness, particularly one who may be the target of a prosecution, ought to be given a fair opportunity to respond fully to questions and not be limited to the "yes" or "no" that typifies answers to leading questions. We intend this comment as a fair warning to prosecutors that we shall strictly scrutinize for fairness any indictment and conviction for perjury before a grand jury that rests upon a witness' responses to leading questions asked by a United States Attorney or Assistant United States Attorney.

*United States v. Boberg,* 565 F.2d 1059, 1062–63 (8th Cir. 1977).

Finally, there exists a serious question raised by defendant concerning whether a sworn statement given under oath in a deposition relative to ancillary court proceedings is encompassed by the § 1001 proscription.[5] Because we find the indictment fatally deficient on other grounds, however, we need not answer this question here.

The judgment of the district court is vacated; the matter is reversed and remanded with directions to dismiss the indictment.

---

5. Such conduct would be clearly covered by the federal perjury statutes. *See* 18 U.S.C. §§ 1621 and 1623. Regarding the scope of § 1001 see *United States v. Bramblett,* 348 U.S. 503, 507–09, 75 S.Ct. 504, 99 L.Ed. 594 (1955), *United States v. Gilliland,* 312 U.S. 86, 89–95, 61 S.Ct. 518, 85 L.Ed. 598 (1941), *United States v. Beer,* 518 F.2d 168, 170–72 (5th Cir. 1975), *United States v. D'Amato,* 507 F.2d 26, 29–30 (2d Cir. 1974), *United States v. Erhardt,* 381 F.2d 173, 175 (6th Cir. 1967) and *Friedman v. United States,* 374 F.2d 363, 366–67 (8th Cir. 1967).