**Donald Ray PERRY, Plaintiff–Appellee,**

v.

**William D. LEEKE, Commissioner, South Carolina Department of Corrections; Attorney General of South Carolina, Defendant-Appellant.**

No. 86–7645.

United States Court of Appeals, Fourth Circuit.

Argued June 1, 1987.

Decided Nov. 5, 1987.

---

Donald John Zelenka, Chief Deputy Atty. Gen., Columbia, S.C., for defendant-appellant.

W. Gaston Fairey (Fairey & Parise, P.A., Columbia, S.C. on brief) for plaintiff-appellee.

Before WINTER, Chief Judge, RUSSELL, WIDENER, HALL, PHILLIPS, MURNAGHAN, SPROUSE, CHAPMAN, WILKINSON and WILKINS, Circuit Judges, sitting in banc.[*]

WILKINSON, Circuit Judge:

Donald Ray Perry was convicted of murder, kidnapping, and criminal sexual assault. He sought a writ of habeas corpus on the ground that he was not permitted to confer with his counsel during a fifteen minute trial recess between direct and cross-examination. The district court ordered that the writ should issue unless Perry was retried within a reasonable period. Because any error at the state trial did not prejudice Perry under the standard established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), we reverse the judgment of the district court and remand with directions to dismiss this petition.

I.

On March 5, 1981, Mary Heimberger had dinner with two friends at a restaurant in Richland County, South Carolina. After dinner, she left the restaurant alone in her own car. She was not seen again until March 7, when two boys found her dead body in a wooded area. Donald Ray Perry's fingerprint was later found on Heimberger's car; tire tracks from Perry's car were also found on the scene, as were prints of Perry's shoes. After police ar-

[*] Judge Ervin did not participate in the hearing or decision of this case.

rested Perry, he confessed that he had shot Heimberger, but said it was an accident.

A medical examination of Heimberger's body indicated that someone had raped her, attempted to strangle her, shot her in both kneecaps, and then shot her fatally in the chest. The entrance to her vagina had been bruised and torn. Following Heimberger's death, a large stick had been shoved into her rectum and left there.

Perry's jury trial began on September 21 and ended on October 2. The defense called many witnesses, including Perry himself. On September 29, the trial judge ordered a fifteen minute recess after Perry completed his direct testimony. Perry's counsel sought to speak to him during the recess, apparently to answer a question Perry had and to advise him of his rights on cross-examination. The trial court did not allow the consultation, explaining that Perry "was not entitled to be cured or assisted or helped approaching his cross-examination." Perry's counsel objected, and the objection was overruled.

Perry was convicted. The state of South Carolina sought the death penalty for Perry; the jury recommended a sentence of life imprisonment. On October 5, the trial judge sentenced Perry to life imprisonment for murder, life imprisonment for kidnapping, and thirty years' imprisonment for criminal sexual conduct in the first degree.

Perry argued before the Supreme Court of South Carolina that he had been denied his Sixth Amendment right to counsel because he was not allowed to speak with his lawyer during the fifteen minute recess between direct and cross-examination. The state Supreme Court rejected this argument. Because Perry had been sentenced to life imprisonment for murder, however, that court reversed the sentence for life imprisonment for kidnapping under South Carolina law. *State v. Perry,* 278 S.C. 490, 299 S.E.2d 324 (1983). The United States Supreme Court denied certiorari. *Perry v. South Carolina,* 461 U.S. 908, 103 S.Ct. 1881, 76 L.Ed.2d 811 (1983).

In November of 1985, more than four years after his trial and more than two and one-half years after the denial of certiorari,

Perry sought a writ of habeas corpus in federal district court. The district court granted relief on the basis of our earlier decisions in *United States v. Allen,* 542 F.2d 630 (4th Cir.1976), *cert. denied,* 430 U.S. 908, 97 S.Ct. 1179, 51 L.Ed.2d 584 (1977), and *Stubbs v. Bordenkircher,* 689 F.2d 1205 (4th Cir.1982), *cert. denied,* 461 U.S. 907, 103 S.Ct. 1879, 76 L.Ed.2d 810 (1983), which held that it is always reversible error for a trial court to prevent a defendant and his counsel from conferring during a recess, no matter how brief.

We granted *en banc* review to determine whether *Allen* and *Stubbs* continue to govern in light of the Supreme Court decisions in *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) and *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). For the reasons expressed in *Allen,* we believe the bar order at issue here was error. We also believe, however, that the reasoning of *Strickland* and *Cronic* mandates reversal only if that error was prejudicial.

II.

We begin by sketching briefly the legal context. The right to counsel is, without question, a fundamental right of criminal defendants. Some interferences with this right pose such a fundamental threat to a fair trial that reversal of a conviction is automatic. *Cronic,* 466 U.S. at 658–59, 104 S.Ct. at 2046–47 (1984); *Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067; *Holloway v. Arkansas,* 435 U.S. 475, 489, 98 S.Ct. 1173, 1183, 55 L.Ed.2d 426 (1978); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Not every limitation of the relationship between a defendant and his attorney violates the defendant's right to counsel, however. A trial court is not required, for example, to interrupt trial proceedings whenever a defendant and his attorney express a desire to confer. Moreover, other deprivations at trial, such as ineffective assistance of counsel, do not amount to a denial of the right to counsel requiring automatic reversal of a conviction; such a deprivation constitutes grounds for reversal only if prejudicial.

*Cronic; Strickland.* A barrier to consultation might thus amount to a fundamental denial of the right to counsel, requiring reversal; a lesser deprivation, requiring reversal only if it is prejudicial; or no deprivation at all.

Here we must determine the appropriate treatment of an order barring consultation during a brief, routine recess. The Supreme Court's decision in *Geders v. United States*, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976), is the starting point. *Geders* held that a defendant's right to counsel was violated, requiring automatic reversal, when the trial court prevented him from consulting with his attorney during an overnight recess. The opinion emphasized the importance of an overnight recess, which gives "the defendant a chance to discuss with counsel the significance of the day's events," to make tactical decisions, and to review strategies for the remainder of the trial. *Id.* at 88, 96 S.Ct. at 1335.

The concurring opinion of Justice Marshall, joined by Justice Brennan, argued that the same rule of automatic reversal was "fully applicable to the analysis of *any* order barring communication between a defendant and his attorney." *Id.* at 92, 96 S.Ct. at 1337 (emphasis in original). The opinion of the Court, however, did not go so far. The majority stated that "an embargo order preventing a defendant from consulting his attorney during a brief routine recess during the trial day" was "a matter we emphasize is not before us in this case." *Id.* at 89 n. 2, 96 S.Ct. at 1336 n. 2. The Court later repeated this caveat:

> The challenged order prevented petitioner from consulting his attorney during a 17–hour overnight recess, when an accused would normally confer with counsel. We need not reach, and we do not reach, limitations imposed in other circumstances.

*Id.* at 91, 96 S.Ct. at 1337.

While there is a division among the circuits, the majority have generally extended the *per se* reversal rule of *Geders* to cover lesser restrictions on consultation. The Sixth Circuit has extended *Geders* to cover a one-hour lunch recess. *United States v. Bryant*, 545 F.2d 1035 (6th Cir.1976). The Fifth and Eleventh Circuits have held that *Geders* covers any recess, no matter how brief. *Crutchfield v. Wainwright*, 803 F.2d 1103 (11th Cir.1986) (en banc); *United States v. Conway*, 632 F.2d 641 (5th Cir. 1980). The District of Columbia Circuit and the Eighth Circuit have indicated agreement with this view in *dicta*. *Mudd v. United States*, 798 F.2d 1509, 1511 (D.C. Cir.1986); *United States v. Vesaas*, 586 F.2d 101, 102 n. 2 (8th Cir.1978). The Second Circuit has rejected this view, however, applying harmless error analysis instead. *United States v. DiLapi*, 651 F.2d 140, 147–48 (2d Cir.1981), *cert. denied*, 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1982); *United States v. Leighton*, 386 F.2d 822 (2d Cir.1967), *cert. denied*, 390 U.S. 1025, 88 S.Ct. 1412, 20 L.Ed.2d 282 (1968).

In *Allen*, a panel of this circuit addressed the issue left open by the majority opinion in *Geders* and adopted the position of Justice Marshall's concurrence. The panel stated that "a restriction on a defendant's right to consult with his attorney during a brief routine recess is constitutionally impermissible" and that reversal would be necessary whether or not the restriction was prejudicial. 542 F.2d at 634.

Later, in *Stubbs*, we qualified *Allen* slightly to require the petitioner "to show that he desired to consult with his attorney, and would have consulted with him but for the restriction placed upon him by the trial judge." 689 F.2d at 1207. Because the defendant in *Stubbs* had not objected to the restriction and because neither petitioner nor his attorney had requested permission to confer, the habeas petition was denied. In the present case, Perry's counsel objected to the restriction when he learned of it, so the *Stubbs* requirement has been satisfied.

### III.

█ It is clear that *Allen* and *Stubbs* would govern in this case in the absence of the Supreme Court's recent decisions in *Strickland* and *Cronic*. The Court's analysis of the Sixth Amendment in those

cases, however, requires us to reexamine our own analysis in *Allen* and *Stubbs*. We believe that the *per se* reversal rule of those cases cannot be squared with the analysis of *Strickland* and *Cronic*, and must be replaced with an inquiry into prejudice.

The Supreme Court held in *Strickland* and *Cronic* that ineffective assistance of counsel at trial does not require reversal of a conviction unless the deficient performance of counsel was sufficiently prejudicial. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. At the same time, the Court reaffirmed its previous cases, including *Geders*, which held that the complete denial of counsel at a critical stage of trial is automatically grounds for reversal. *Cronic*, 466 U.S. at 659 & n. 25, 104 S.Ct. at 2047 n. 25.

*Strickland* and *Geders* do not imply, however, that Sixth Amendment claims can be mechanically divided into a typology requiring automatic reversal when there is a "denial of counsel" and a prejudice analysis where there is "ineffective assistance." The determinative factor in analyzing a Sixth Amendment claim is not the label to be attached to the alleged deprivation. The Supreme Court has recognized as much by alternately describing *Geders* as a case involving the denial of counsel, *Cronic*, 466 U.S. at 659 n. 25, 104 S.Ct. at 2047 n. 25, and as a case involving ineffective assistance. *Strickland*, 466 U.S. at 686, 104 S.Ct. at 2064.[1] Instead, "the ultimate focus of the inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." *Strickland*, 466 U.S. at 696, 104 S.Ct. at 2069.

*Strickland* and *Cronic* held that because the purpose of the Sixth Amendment "is simply to ensure that criminal defendants receive a fair trial," *id.* at 689, 104 S.Ct. at 2065, the analysis of claims alleging violations of the right to counsel always focuses on prejudice. Automatic reversal is warranted only where prejudice can be presumed:

> [T]he right to the effective assistance of counsel is not recognized for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.... There are, however, circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.

*Cronic*, 466 U.S. at 658, 104 S.Ct. at 2046. *See also Strickland*, 466 U.S. at 692, 104 S.Ct. at 2067.

In *Cronic* and *Strickland*, the petitioners contended that they had been deprived of their Sixth Amendment rights because they had been represented by allegedly incompetent or inadequate counsel. Such a deprivation is far more likely to have a prejudicial effect than the deprivation at issue here. Perry had very competent attorneys with whom he was able to confer during an overnight recess the night before and during a luncheon recess immediately prior to his testimony. It would make little sense to maintain a *per se* rule of reversal for a brief restriction on consultation, but to inquire into prejudice if Perry had been represented incompetently throughout. The existence of prejudice from a restric-

---

1. Other circuits have likewise applied different labels. The Eleventh Circuit, sitting *en banc*, recently found that a bar on consultation during recess constitutes a denial of the assistance of counsel, requiring automatic reversal. *Crutchfield v. Wainwright*, 803 F.2d 1103, 1108 (11th Cir.1986). The Fifth Circuit, ruling prior to *United States v. Cronic*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), held that a bar during any recess requires automatic reversal, but cast its rule as a means of protecting the "right to the effective assistance of counsel." *United States v. Conway*, 632 F.2d 641, 644–45 (5th Cir.1980). Similarly, the District of Columbia Circuit and the Second Circuit have apparently assumed that the right involved was the right to effective assistance of counsel. *Mudd v. United States*, 798 F.2d 1509, 1513 (D.C.Cir. 1986); *United States v. Leighton*, 386 F.2d 822, 823 (2d Cir.1967), *cert. denied*, 390 U.S. 1025, 88 S.Ct. 1412, 20 L.Ed.2d 282 (1968).

tion such as this one is necessarily tied to the surrounding facts; it cannot be and will not be presumed to have so infected the entire trial that no course other than reversal of this conviction is conceivable.

The quality of Perry's representation belies the need for a rule of automatic reversal. He was represented by two attorneys, Mr. Fairey and Mr. Mullineaux, who were present and active throughout the case. The defense presented some twenty-seven witnesses in Perry's behalf. Cross-examination of government witnesses was vigorous throughout. In all different stages of the trial—from jury selection through closing argument, from the guilt phase through the sentencing phase—this defendant was well served and ably represented. The trial judge commended Perry's counsel on the record for their competency and zeal, adding that he hoped "that all my lawyers would be equally prepared and dedicated to their cases." It would be far too simplistic to equate this case with those cases where judgment was rendered on an uncounselled defendant and to lump them all together under a "right to counsel" rubric which requires automatic reversal. The law must be sensitive to matters of degree, here the fact that for all but the tiniest fraction of trial time defendant consulted with counsel and was championed by counsel in the best traditions of adversary justice.

Because the state trial proceedings met the requirements of *Geders,* our holding is consistent with that decision. This was a lengthy trial, and there were eleven different recesses prior to Perry's testimony, including two overnight recesses, one weekend recess, and significantly, a luncheon recess immediately before Perry took the stand. At each of these recesses, there was no restriction on Perry's access to his counsel. During Perry's direct examination, a recess was also held at the request of a juror; Perry was not barred from access to counsel at that time either. After Perry's testimony, there were recesses of varying durations—fifteen minute recesses, luncheon recesses, and overnight recesses—during all of which Perry and his counsel were able to consult. Thus the bar order at issue here applied to but one of many recesses, and a brief one at that.

The restriction at issue in *Geders* posed so great a danger to a fair trial that prejudice could be presumed. Its duration was extreme (a seventeen-hour overnight recess) and it occurred at a time when defendant and his counsel could have expected to confer. In contrast, the restriction here was not only brief, but occurred during an unscheduled recess during trial. Perry and his counsel had no entitlement to a recess at this time and had no reason to expect a recess to occur by chance between direct and cross-examination. In a majority of instances, cross-examination of a witness follows direct examination without a break. *See Geders,* 425 U.S. at 90, 96 S.Ct. at 1336. Because Perry had no entitlement to this recess, the dissenters' speculation on what valuable services counsel may have rendered is simply misdirected. New ideas or strategies might occur to a defendant or his counsel at any time during a trial, but there is no right to halt the proceedings in order to consult. To reverse automatically a conviction because of an absence of consultation during one brief, fortuitous recess in a trial which spanned nearly two weeks would be to confer a benefit upon a criminal defendant who may not deserve it. The imprecision of a *per se* approach is thus apparent. The proper inquiry is whether this trial was unfair, whether this defendant suffered prejudice, whether this conviction was infirm—in short, whether justice was done in *this* case.

## IV.

A *per se* rule of reversal is "the exception and not the rule" under any circumstances, *Rose v. Clark,* —— U.S. ——, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460 (1986). To promulgate such a rule in these circumstances would be doubly inappropriate. The Supreme Court has held that "[t]he role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited." *Barefoot v. Estelle,* 463 U.S. 880, 887, 103 S.Ct. 3383, 3391, 77 L.Ed.2d 1090 (1983). A federal habeas court must assure itself that state process did not go

seriously amiss. The role of the habeas court is not to flyspeck state proceedings, however, but to focus on their "fundamental fairness." *Strickland,* 466 U.S. at 696, 104 S.Ct. at 2069.

Collateral review of state convictions by federal courts undermines the finality of those convictions, degrades the prominence of the trial itself, and creates strains in our federal system. *See Engle v. Issac,* 456 U.S. 107, 127–28, 102 S.Ct. 1558, 1571–72, 71 L.Ed.2d 783 (1982). Most serious here, though, are the costs associated with retrying a defendant who obtains habeas relief. While the district court's order might result in a retrial rather than release for Perry, the "[p]assage of time, erosion of memory, and dispersion of witnesses" may as a practical matter make a second prosecution difficult. *Id.*

Even if an effective retrial is possible, it imposes enormous costs on courts and prosecutors, who must commit already scarce resources "to repeat a trial that has already once taken place." *United States v. Mechanik,* 475 U.S. 66, 106 S.Ct. 938, 942, 89 L.Ed.2d 50 (1986). It imposes costs on victims who must "relive their disturbing experiences." *Id.* 106 S.Ct. at 942. *See also Morris v. Slappy,* 461 U.S. 1, 14, 103 S.Ct. 1610, 1618, 75 L.Ed.2d 610 (1983). While "prejudical error" would require a retrial regardless of the inconvenience, *id.,* those who participated in the initial proceedings should not be compelled to confront these dreadful events a second time if the first trial has been fair. Retrials, moreover, may lack the reliability of the initial trial where witness testimony was unrehearsed and witness recollections were more immediate.

The costs associated with retrial, and the possibility that changed circumstances may make retrial less reliable or even impossible, *Engle,* 456 U.S. at 127–28, 102 S.Ct. at 1571–72, are likely to be especially high in this case. Perry did not file his petition for a writ of habeas corpus until more than four years after his trial and more than two and one-half years after the Supreme Court denied his petition for certiorari. As the Supreme Court noted in *Mechanik,*

these costs "are an acceptable and often necessary consequence when an error in the first proceeding has deprived a defendant of a fair determination of the issue of guilt or innocence. But the balance of interest tips decidedly the other way when an error has no effect on the outcome of the trial." 106 S.Ct. at 943.

## V.

 The sole remaining issue, therefore, is whether Perry suffered prejudice because of the state court's bar order. We hold that he did not.

The standard of prejudice under *Strickland* is whether defendant received a "fair trial" in which "evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding." *Strickland,* 466 U.S. at 685, 104 S.Ct. 2063. On the basis of the record before us there can be no legitimate fear that the trial court's order jeopardized Perry's "ability ... to receive a fair trial," *Cronic,* 466 U.S. at 658, 104 S.Ct. at 2046, and there can be no doubt that Perry received "the assistance necessary to justify reliance on the outcome" of his trial. *Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067.

There is no reason to believe that any communication which might have occurred during the brief recess at issue could have altered Perry's performance on cross-examination. There is no contention that his counsel failed to explain his rights on cross-examination to him during the many recesses in which consultation was allowed, including the luncheon recess called immediately prior to his taking the stand, nor has it been argued that anything occurred during his direct examination that would have made a "refresher course" necessary. Further, it is clear from the record that Perry took full advantage of his rights on cross-examination and placed his version of events before the jury.[2]

The evidence against Perry was overwhelming. Tire tracks from Perry's car were found at the murder scene, as were Perry's footprints. His fingerprint was found on the victim's car. Perry admitted,

---

2. Perry was anything but a passive witness on cross-examination. He was able to resist at-

at one point, to shooting the victim, but claimed the shooting had been an accident. He later admitted to having sexual relations with the victim against her will on the night of her murder, but claimed that he did so under duress.

The vigor of Perry's representation throughout by a team of two able attorneys, the length of the trial and the utter brevity of the bar order, the presence of consultative recesses shortly before Perry's testimony, and the absence of any other colorable assignment of error to any other aspect of these prolonged proceedings persuade us that the possibility of prejudice is utterly remote. While a disputed question of material fact as to prejudice would require a remand, we are unpersuaded that an evidentiary hearing is necessary on this record.[3]

## VI.

The gravity of a criminal conviction requires that courts strive to make criminal

---

tempts by the prosecution to color his story, and he was able to tell his own version of events. For example, he was asked about his familiarity with the victim's apartment:

Q. All right. So you don't remember then going out to this apartment complex, do you?
A. I don't even know where these complexes is as I have stated.
Q. Well, that's where Mrs. Heimberger lived. That's where she was living on March the 5th. Do you remember going out there in your car and locking up your car somewhere in this area?
A. How many times I got to tell you? I don't know where this complex is. I don't know where the complex is.

. . . . .

Q. Do you remember, sir, going out there and getting in the car with Mrs. Heimberger? Do you remember that?
A. I refuse to answer that. I have already stated that I have not—I have no knowledge of where these complexes is if that's the only question you have to ask me.

He corrected the prosecution when questioned about his gun:

Q. You put [the gun] in your car in your possession, right?
A. At what time are you talking about? When?
Q. Well, sir, when you took it in and cleaned it the first time before you went over to Bumpsie's, you intentionally put it in your vehicle, didn't you?
A. No, I didn't.
Q. You did not put it in your vehicle?
A. No, I didn't.
Q. I thought I heard you say you put it under the floorboard, the floormat?
A. I did under the floormat of my mother-in-law's car.

He told his own version of events when questioned about his fingerprint:

Q. Can you tell me, sir, how your fingerprint got on Mrs. Heimberger's automobile?

. . . . .

A. Oh, well, as I was searching her vehicle.

. . . . .

Q. How did you come to get in the particular location that it was found if you were searching her vehicle?

A. What you mean in the particular location?
Q. You were on the inside searching the car, weren't you?
A. I was sitting in the front seat with my left foot in it.
Q. Sitting in the front seat. Well, were you aware that the fingerprint was taken on the outside of the window and not on the inside?
A. Yes, I am aware of that.
Q. So you must have put it on there before you got in, is that what you're saying?
A. No, my fingerprints could have been put on the window after I grabbed on to the window and the door when Duke–Dog was driving off.

Perry also took advantage of his right to explain his answers on cross-examination. For example, when shown his time card, which indicated that he had gone to work the day after the murder, he testified as follows:

Q. That's your time card where you went to work that day, wasn't it?
A. It has on here Friday P.M. 12:09 but it also had in handwriting 3–6–81 that anybody could put down.

3. Chief Judge Winter's dissent contends that the application of a prejudice analysis in this case is likely to lead to interference with the attorney-client relationship. This case raises no such danger, however, because the clear absence of prejudice has obviated the need for any inquiry into that relationship. We therefore see no need to address this concern in this case, and we do not address it.

We note, however, that there may be cases which do raise this concern. Requiring a defendant to show prejudice in those cases might require him to reveal privileged confidences. See *Redman v. Bailey*, 657 F.2d 21, 24 (3d Cir. 1981), *cert. denied*, 454 U.S. 1153, 102 S.Ct. 1024, 71 L.Ed.2d 310 (1982). The prejudice inquiry under *Strickland* and *Cronic* may pose a similar dilemma. In those cases the Supreme Court placed on the defendant the burden of showing that he had been prejudiced by the ineffective assistance of counsel, 466 U.S. 687, 104 S.Ct. at 2064; 466 U.S. 658, 104 S.Ct. at 2046. *Strick-*

proceedings as fair and flawless as possible. While the courts must do everything they can to protect the rights of accused persons, they must not lose sight of the inevitability of imperfection in our criminal justice system. It would be wrong to exalt technical perfection at the expense of our society's legitimate and weighty interest in punishing offenders. Where error in a criminal trial is not of the variety that threatens its reliability, rules of *per se* reversal are unwarranted. A defendant who suffers such an error must be given the opportunity to show that he has been prejudiced thereby, but he ought not to reap a windfall where he has not been injured.

Because Perry was not prejudiced by the trial court's restriction, the judgment of the district court is reversed and remanded with directions to dismiss this petition.

REVERSED AND REMANDED.

HARRISON L. WINTER, Chief Judge, dissenting:

Few categories of constitutional error so undermine the adversary system as to warrant reversal without any proof of prejudice in a particular case. Denial of the assistance of counsel during a critical stage of criminal proceedings is one such category of error. Whether the deprivation of counsel spans an entire trial or but a fraction thereof, it renders suspect any result that is obtained.

The Supreme Court has long recognized the indispensable role in the adversary process that is played by legal counsel. The Court invokes a strong presumption that counsel perform competently in this role, and defers routinely to what are invariably characterized as an attorney's "strategic" decisions. As a necessary corollary to this principle, however, we must accept the consequences of preventing an attorney from performing that vital role. The majority here does not deny that the district court committed an error of constitutional magnitude. Rather than create arbitrary lines

below which we pretend to some assurance that prejudice is unlikely, we must recognize the concomitant presumption that a denial of counsel—for whatever length of time—is a denial of constitutional right and that a conviction obtained where there has been such a denial cannot stand.

I.

In *Geders v. United States*, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976), the Supreme Court overturned a conviction obtained after defendant was precluded from consulting with his attorney during a seventeen-hour overnight recess between his direct and cross-examination. The Court held that defendant's Sixth Amendment right to counsel had been violated, and reversed and remanded the case without any inquiry into whether the violation had resulted in actual prejudice to defendant. The opinion noted, however, that the effect of a similar communication bar imposed during "a brief routine recess" in the trial was not before the Court. 425 U.S. at 89 n. 2, 96 S.Ct. at 1336 n. 2.

The issue reserved in *Geders* was first addressed by us in *United States v. Allen*, 542 F.2d 630 (4 Cir.1976), *cert. denied*, 430 U.S. 908, 97 S.Ct. 1179, 51 L.Ed.2d 584 (1977). We held in *Allen* that

the Sixth Amendment right to counsel.... is so fundamental that there should never occur any interference with it for any length of time, however brief, absent some compelling reason.

542 F.2d at 633. We deemed insufficient to justify even a brief encroachment on the right to counsel the fear that defense attorneys would engage in unethical coaching—the only rationale offered in support of the trial court's action here. We also refused to credit the assumption that many attorneys would flout their ethical obligations. Moreover, we noted that improper coaching can be deterred by knowledge of the prosecution's ability to inquire about such coaching during cross-examination. The few attorneys whose scruples are more easily

land and *Cronic* did not, however, address the question of burden allocation where judicial error, rather than the shortcomings of defense

counsel, is at issue. The absence of prejudice under any allocation makes it unnecessary for us to address that question here.

overcome will nonetheless achieve little in a few minutes time, and will focus instead on pretrial efforts which the court is, in any case, powerless to prevent. As Justice Marshall, joined by Justice Brennan, remarked in his concurrence in *Geders*,

> I find it difficult to conceive of any circumstances that would justify a court's limiting the attorney's opportunity to serve his client because of fear that he may disserve the system by violating accepted ethical standards. If any order barring communication between a defendant and his attorney is to survive constitutional inquiry, it must be for some reason other than a fear of unethical conduct.

425 U.S. at 93, 96 S.Ct. at 1338. Accordingly, we concluded in *Allen* that "the Sixth Amendment right to counsel ought to prevail over the extremely limited value of circumscribing that right for perhaps 20 or 40 minutes during the course of a trial day." 542 F.2d at 633. We rejected the idea of conducting a case-by-case assessment of whether a defendant had been prejudiced by a given deprivation of counsel; "the administration of such a rule ... would not be worth its cost." *Id.*

Six years later, in *Stubbs v. Bordenkircher*, 689 F.2d 1205, 1206 (4 Cir.1982), *cert. denied*, 461 U.S. 907, 103 S.Ct. 1879, 76 L.Ed.2d 810 (1983), we reaffirmed our holding in *Allen:*

> We think the district court properly concluded that any restriction upon a defendant's access to his counsel during a recess, whether the recess be extended or brief, is constitutionally impermissible;

and, further, that a petitioner such as Stubbs is not required to demonstrate prejudice.

We added the requirement, however, that defendant prove that his right to counsel was actually denied i.e., "that he desired to consult with his attorney, and would have consulted with him but for the restriction placed upon him by the trial judge." *Id.* at 1207.[1]

## II.

The majority in this case holds that two recent Supreme Court decisions have undercut *Allen* and *Stubbs*.[2] I cannot agree.

In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) the Supreme Court established a two-part test for analyzing claims of ineffective assistance of counsel: a defendant must prove that the assistance was "deficient," and that he was so prejudiced thereby that the result of the trial is rendered unreliable. 466 U.S. at 687–90, 104 S.Ct. at 2064–66. In *United States v. Cronic*, 466 U.S. 648, 660–62, 666, 104 S.Ct. 2039, 2050, 80 L.Ed.2d 657 (1984), the Court held that there are some limited circumstances in which ineffectiveness may be "properly presumed without inquiry into [counsel's] actual performance at trial," but that such was not the case there. Neither of these decisions dictates a different result in *Allen* or *Stubbs;* to the contrary, they support the analysis employed in those earlier cases.

Unlike *Allen, Stubbs* and the case at bar, both *Strickland* and *Cronic* involved defendants who had full access to their attor-

---

1. The government argues that this latter requirement was not met in this case because there is no proof that Perry desired to consult with his attorney during the break—only that his attorney wished to speak with Perry. This distinction is untenable. As Perry argues, it is the function of defense attorneys to speak on behalf of their clients in addressing the court. Indeed, an attorney's continual presence is constitutionally required precisely because the defendant will often be unable to gauge for himself when he is in need of legal assistance. *See Strickland v. Washington*, 466 U.S. 668, 685–89, 104 S.Ct. 2052, 2063–65, 80 L.Ed.2d 674 (1984); *Geders*, 425 U.S. at 88–89, 96 S.Ct. at 1335–36. When examined in context, it is clear that the opinion

in *Stubbs* would recognize an objection made by *either* the attorney or defendant himself. *See* 689 F.2d at 1207. *See also Crutchfield v. Wainwright*, 803 F.2d 1103, 1109 (11 Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 3235, 97 L.Ed.2d 740 (1987) ("If the record reflected such a desire [to consult] by either [defendant or his attorney], we would find that the trial judge's admonition [against such consultation] constituted reversible error"). Moreover, *Geders* itself involved an objection registered solely by the defendant's attorney.

2. It is interesting to note that the government made no such suggestion in its brief.

neys; the question in each of those Supreme Court decisions concerned the adequacy of the performance of the attorneys. Indeed, in both *Strickland* and *Cronic,* the Court was careful to distinguish cases in which a defendant's access to counsel was denied at some key point during the trial. *Cronic,* 466 U.S. at 659 n. 25, 104 S.Ct. at 2047 ("The Court has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding. *See, e.g., Geders v. United States,* ...."); *Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067. *See also Green v. Arn,* 809 F.2d 1257, 1262–63 (6 Cir.1987) *pet. for cert. filed* (Apr. 24, 1987); *Crutchfield v. Wainwright,* 803 F.2d 1103, 1106–09 (11 Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 3235, 97 L.Ed.2d 740 (1987) (*"Cronic and Strickland* make clear that 'where actual or constructive denial of assistance of counsel occurs a per se rule of prejudice applies' " (citation omitted)); *Siverson v. O'Leary,* 764 F.2d 1208, 1216 (7 Cir.1985) (*Strickland* and *Cronic* explicitly treat as separate and distinct cases involving the denial of counsel and cases involving ineffective assistance).

There are several justifications for this distinction. As the Supreme Court noted in *Cronic,* 466 U.S. at 658–59, 104 S.Ct. at 2046–47:

There are ... circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.

Most obvious, of course, is the complete denial of counsel. The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial. [footnotes omitted]

*Accord Strickland* 466 U.S. at 692, 104 S.Ct. at 2067; *Crutchfield,* 803 F.2d at 1108–09. If the denial occurs at a critical stage of the proceedings, its duration should make little difference. *See Delaware v. Van Arsdall,* 475 U.S. 673, 681, 106 S.Ct. 1431, 1437, 89 L.Ed.2d 674, 685 (1986) ("some constitutional errors—such

as denying a defendant the assistance of counsel at trial ...—are so fundamental and pervasive that they require reversal without regard to the facts or circumstances of the particular case"); *Geders,* 425 U.S. at 88–89, 96 S.Ct. at 1335; *quoting Powell v. Alabama,* 287 U.S. 45, 68–69, 53 S.Ct. 55, 63–64, 77 L.Ed. 158 (1932) ("[A criminal defendant] requires the guiding hand of counsel at every step in the proceedings against him"); *Crutchfield,* 803 F.2d at 1108 (any denial of counsel constitutes reversible error and requires a new trial); *United States v. Bryant,* 545 F.2d 1035, 1036 (6 Cir.1976). Indeed, as Justice Marshall observed in his *Geders* concurrence, "the general principles adopted by the Court today are fully applicable to the analysis of *any* order barring communication between a defendant and his attorney, at least where that communication would not interfere with the orderly and expeditious progress of the trial." 425 U.S. at 92, 96 S.Ct. at 1337 (emphasis in original).

Our system of criminal justice is grounded on the premise that the adversarial process yields fair and reliable results. This process can achieve that result only when there are present reasonably effective advocates on each side. As the Supreme Court explained in *Strickland,* "[t]he Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results." 466 U.S. at 685, 104 S.Ct. at 2063. Because of the difficulties in second-guessing strategic decisions made in the heat of a trial, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance...." *Id.* at 689, 104 S.Ct. at 2065. Thus, once a defendant's fate is placed in the hands of an attorney courts are loathe to impugn the resulting verdict as unfairly procured. However, that presumption of fairness is triggered only when the attorney is allowed to do his job. It follows that a defendant's ability to confer with his attorney at every critical stage is a prerequisite to invoking the presumption that the result is a just one. *See Cronic,* 466 U.S. at

659, 104 S.Ct. at 2047 ("The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial"). Accordingly, the heavy burden imposed on complaining defendants in ineffective assistance cases like *Strickland* and *Cronic* has no relevance in cases alleging a complete denial of such assistance at a critical juncture:

> The crucial premise on which the *Strickland* formula rests—that counsel was in fact assisting the accused during the proceedings and should be strongly presumed to have made tactical judgments "within the wide range of reasonable professional assistance," 104 S.Ct. at 2066—is totally inapplicable when counsel was absent from the proceedings and unavailable to make any tactical judgments whatsoever.

*Siverson,* 764 F.2d at 1216. The same presumption that requires a demonstration of prejudice in establishing claims of ineffective assistance simultaneously renders unnecessary such a requirement for claims of denial of assistance.

### III.

One reason cited by the *Strickland* Court for endorsing a strong presumption of effective assistance is the concern that "intrusive post-trial inquiry into attorney performance or ... detailed guidelines for its evaluation" risks interfering with the attorney-client relationship and deterring ardent and independent advocacy. *See* 466 U.S. at 690, 104 S.Ct. at 2066. It is precisely those risks, however, which are likely to result from application of *Strickland*'s requirement of proof of prejudice in cases alleging denial of assistance. *Bailey v. Redman,* 657 F.2d 21, 24 (3 Cir.1981), *cert.*

*denied,* 454 U.S. 1153, 102 S.Ct. 1024, 71 L.Ed.2d 310 (1982) (rejecting prejudice requirement for this reason). As the District of Columbia Circuit recently explained:

> The only way that a defendant could show prejudice would be to present evidence of what he and counsel discussed, what they were prevented from discussing, and how the order altered the preparation of his defense. Presumably the government would then be free to question defendant and counsel about the discussion that *did* take place, to see if defendant nevertheless received adequate assistance.
>
> We cannot accept a rule whereby private discussions between counsel and client could be exposed in order to let the government show that the accused's sixth amendment rights were not violated.

*Mudd v. United States,* 798 F.2d 1509, 1513 (D.C.Cir.1986) (emphasis in original).[3] The majority ostensibly avoids this predicament by foregoing any assessment of prejudice in this case, and choosing instead to label harmless, as a matter of law, the fifteen-minute deprivation of counsel to which Perry was subjected. Such an approach, while expedient in this instance, provides neither a logical nor lasting solution to the problem.

As noted above, any denial of a defendant's access to counsel, no matter how long, is presumptively prejudicial if it occurs during a critical stage of the proceedings. The nonmonetary value of an attorney's assistance is not measured solely, or even primarily, in hours and minutes. It is not difficult to conceive of situations in which a ten or fifteen minute recess could be critical to the outcome of a trial. It may be that counsel during direct examination had a new thought as to a possible helpful

---

**3.** Another justification for requiring the defendant to demonstrate prejudice is to ensure that there has actually been a Sixth Amendment violation, i.e., an impairment of "the reliability of the trial process." *Cronic,* 466 U.S. at 658, 104 S.Ct. at 2046. In this case, however, the requirement that a defendant prove an actual deprivation of counsel—that there would have been consultation but for the court's order—serves the same purpose. Had the attorney been permitted to consult with his client, we could have assumed that he would have performed competently so as to trigger the presumption of a fair and reliable result. Conversely, once it is assumed that, but for the court's intervention, the attorney would have been performing his advisory function, it follows that the denial of his assistance was presumptively detrimental and casts doubt upon the fairness and reliability of the trial itself.

inquiry which could be made on rebuttal if defendant's recollection of this information was not triggered until defendant appeared on the witness stand. *See, e.g., Allen,* 542 F.2d at 633. It may be that counsel during direct examination had a new thought as to a possible inquiry which could be made on rebuttal if defendant's proposed answer were only known. It may be that the prosecution elicited from defendant unanticipated and damaging testimony which defendant can effectively neutralize, but only if he can explain the situation to his attorney so that the latter can ask the appropriate questions during rebuttal. Even an attorney's soothing assurances to a defendant, prior to cross-examination, along with reminders of the rules for such testimony, could have a marked effect on a defendant's performance and demeanor on the stand. Other examples can be posited, but the possible situations in which the assistance of counsel may be critical are too numerous for exhaustive treatment here. Their only common threads are the irrelevance of the duration of the deprivation of counsel or the fortuity of the circumstances giving rise to the deprivation.[4] Indeed, deprivation during an overnight recess, which the majority acknowledges to require automatic reversal, may entail an effective deprivation of little more than the fifteen minutes at stake here because many attorneys will devote the vast majority of such an extended break to preparation for the next day of trial, while sending the client home to sleep, or back to jail.

Even were I to concede that duration is determinative of prejudice, I would nonetheless find the majority's position insupportable. In the majority's view, there lies somewhere between the seventeen hours in *Geders* and the fifteen minutes in the instant case a period of time above which all deprivations of counsel are prejudicial *per*

se, and below which they are invariably harmless. Divination of the dividing point between these critical periods is, to my mind, an impossible task. Such an endeavor will require either an arbitrary selection, unrelated to the existence or probability of actual prejudice, or the very type of case-by-case inquiry which the *per se* approach wisely seeks to avoid. In either situation, it is the delicate and time-honored attorney-client relationship, and its pivotal role in our adversary system, that suffers.

Most circuits that have considered the issue have adopted a *per se* rule under which deprivations of counsel during critical stages of a trial are held to warrant reversal without a finding of prejudice. *Crutchfield,* 803 F.2d at 1109. *See, e.g., Green,* 809 F.2d at 1263 (6 Cir.1987) (defendant need merely prove attorney's absence during critical stage—harmless error analysis appropriate only in some instances, such as absence during preliminary hearing, jury deliberations and return of verdict); *Crutchfield,* 803 F.2d at 1109–10 (11 Cir.1986) (*per se* rule applies once defendant proves consultation would have occurred absent court intervention), *Bailey,* 657 F.2d at 24 (3 Cir.1981) (no demonstration of prejudice is necessary; defendant must only prove interference with his desire to meet with counsel); *United States v. Vesaas,* 586 F.2d 101, 102 n. 2 (8 Cir. 1978) ("we have grave doubts that even a brief restriction on a criminal defendant's right to confer with counsel can be squared with the Sixth Amendment") (dicta).[5] The Second Circuit, while declining to grant an automatic reversal in the case before it at the time, has suggested the possibility of prospective application of a *per se* rule. *In United States v. Dilapi,* 651 F.2d 140, 147–49 (2 Cir.1981), *cert. denied* 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1982), the court refused to require reversal where

**4.** The majority opinion suggests that because Perry had no entitlement to a recess, the aid which his counsel may have given him during the fortuitous one which occurred is simply irrelevant. This, it seems to me, stands Sixth Amendment precedents on their head. It is not the fortuity of the opportunity that a defendant has to consult counsel that is important. It is the services that counsel could render.

**5.** The Seventh Circuit does not require defendants to prove prejudice, as in *Strickland,* but does permit the government to prove that the error was harmless beyond a reasonable doubt. *Siverson,* 764 F.2d 1208, 1217 (7 Cir.1985).

defendant's consultation with counsel was barred during a five-minute recess in the middle of defendant's cross-examination, finding "not even a remote risk of actual prejudice." This was, however, the first ruling in that circuit to deal with a brief recess in the aftermath of *Geders*. Accordingly, the court was careful to note:

> We need not determine whether a similar instruction would require reversal in cases arising hereafter without regard to actual prejudice. It is sufficient to state that the instruction should not again be given.

*Id.* at 149.

A *per se* rule of reversal for all deprivations of counsel would pose no grave threat to the administration of the criminal justice system. A prophylactic rule of the type advocated here would be extremely easy to follow. As the court in *DiLapi* apparently recognized, *supra*, once a rule is announced that proscribes any judicial interference with attorney-client consultations, there is no reason to believe that trial courts will deviate therefrom. In those rare cases where deviations are nonetheless contemplated, the advantages of a *per se* rule will still outweigh its costs. As the Supreme Court observed in *Geders,*

> There are a variety of ways to further the purpose served by sequestration without placing a sustained barrier to communication between a defendant and his lawyer. To the extent that conflict remains between the defendant's right to consult with his attorney during a long overnight recess in the trial, and the prosecutor's desire to cross-examine the defendant without the intervention of counsel, with the risk of improper "coaching," the conflict must, under the Sixth Amendment, be resolved in favor of the right to the assistance and guidance of counsel. *Brooks v. Tennessee,* 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972).

425 U.S. at 91, 96 S.Ct. at 1336.

In sum, I do not believe that *Strickland* and *Cronic* necessitate reconsideration or modification of this circuit's precedents, nor do I believe that any modification is desirable. Any deprivation of the right to counsel, a right which lies at the foundation of our system of criminal justice, warrants reversal without proof of prejudice, and the Supreme Court has consistently so held. I see no justification for the exception created by the majority.

Accordingly, I respectfully dissent.

PHILLIPS, MURNAGHAN and SPROUSE, JJ., authorize me to say that they join in this opinion.

MURNAGHAN, Circuit Judge, dissenting:

What Chief Judge Winter has written in dissent states eloquently and lucidly why the majority, to my mind, has lapsed into imprecise thinking and disregard of the American Constitution's Sixth Amendment guarantee to the rights to counsel for those accused of crime. I write in dissent only to state additional reasons why that is so.

The majority seems to agree that *United States v. Allen,* 542 F.2d 630 (4th Cir.1976), *cert. denied,* 430 U.S. 908, 97 S.Ct. 1179, 51 L.Ed.2d 584 (1977), and *Stubbs v. Bordenkircher,* 689 F.2d 1205 (4th Cir.1982), *cert. denied,* 461 U.S. 907, 103 S.Ct. 1879, 76 L.Ed.2d 810 (1983), both of which indicate there is constitutional error here mandating a new trial, "continue to govern" (majority Slip Op. at 4), except to the extent, if any, the Supreme Court decisions in *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) and *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) may implicitly compel an opposite result. The difference between the two situations is, however, not insubstantial, namely, (a) one is where counsel is fully and effectively denied for part of the trial and (b) the other is where counsel is constantly available to the defendant but acts for part of the time in an ineffective manner. It is logically impossible to argue that *no* counsel is effective counsel. There is simply no counsel effective or ineffective. It is another thing to contend that counsel who was on the scene all the time and available to the defendant was not ineffective or that his ineffectiveness did not occasion prejudice.

The difference stems from the fact that absolute denial of counsel runs up explicitly against the Sixth Amendment guarantee of the right "to have the Assistance of Counsel" while *ineffective* assistance of counsel is not specifically proscribed. Its less favored status derives in part from the impact of the due process provisions of the Fifth Amendment guaranteeing a fair trial, and "due process" which is inevitably a more flexible, less specific doctrine. *See Strickland,* 466 U.S. at 685, 104 S.Ct. at 2063. Denial of counsel is a "pure" Sixth Amendment violation.[1] Ineffective assistance is, under *Strickland,* a Sixth Amendment violation, but a violation derived by reference to and under interpretative pressure of the Fifth Amendment.

The reason for that difference, and the difference in result depending on which is applicable, are not difficult to ascertain. Where there is absolute denial of counsel, the error which exists (the majority accepts that the complete barring of counsel during a court recess was error, Slip Op. at 4) is an error attributable to the trial judge. When ineffective assistance is concerned, the judge is not involved in the mistake, the error being that of counsel. Counsel's decisions often are not effectively subject to criticism because of the wide-ranging consideration that he or she must be allowed to make "strategic" decisions. In any event, unlike the situation where there is outright denial of counsel, the judge remains completely unbiased and impartial in the case of ineffective assistance.

In the case of outright denial of counsel, however, he or she who must address the issue before it reaches us has every reason, however subconscious it may be, to find grounds for ruling "no prejudice" in order to sustain his or her action and to avoid the need for a new trial.[2] His or her decision inevitably serves to shape the question as it reaches us on appeal. Such shaping, perhaps biased in a case of total denial such as we have here, is not so biased in the case of counsel always available to defendant but charged with prejudicial ineffective assistance.

It is unlikely that judges would consciously tailor their findings in order to save themselves from being reversed on appeal. We may assume that judges, despite some unjustified generalized suspicions to the contrary, are honorable men and women and would not take a step consciously in derogation of the defendant's rights in order to spare themselves reversal on appeal.

However, a person, on becoming a judge, does not become devoid of human reactions and motivations and the possibility of subconscious motivation cannot be discounted or ignored. It is a bad rule of law which subjects a judge to the temptation. That is perhaps why the rule that denial of counsel for any length of time whenever it could be

---

1. The majority attempts to minimize the importance of the distinction, citing cases which have held that where there is a conflict between the unfettered assistance of counsel, on the one hand, and the need for the orderly and efficient procession of the case, on the other, the right to assistance of counsel must give way. The majority relies on *Morris v. Slappy,* 461 U.S. 1, 11, 103 S.Ct. 1610, 1616, 75 L.Ed.2d 610 (1983), where it was said:

 > Not every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel.... Trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons.

*See also Geders v. United States,* 425 U.S. 80, 91, 92, 96 S.Ct. 1330, 1337, 47 L.Ed.2d 592 (1976); *United States v. Vasquez,* 732 F.2d 846 (11th Cir.1984); *Pope v. State,* 440 A.2d 719 (R.I.1982). However, those cases all focus on avoidance of interruption of a trial to permit the defendant's consultation with counsel. Here the interruption (recess) had already occurred for completely different and independent reasons and lasted for 15 minutes or so. The conference between counsel and client which was sought would not have led in any way to a delay or other disruption of the trial.

2. If the judge, unmotivated consciously *or unconsciously* by such considerations, would have granted a new trial, we, as appellate judges, would not even confront the issue. Yet the subconscious desire to be thought right is a powerful and common force, and might quite possibly lead to a denial of a new trial when one should have been granted.

significant to the defense will result in a new trial. Here the deprivation of any counsel "could" be prejudicial, and requiring greater proof would, for reasons convincingly alluded to by Chief Judge Winter, be improper as forcing abrogation of the attorney-client privilege.

It is, indeed, surprising that the majority, in light of noisy criticism of the courts for not adhering strictly to the language of the Framers, should proceed so blithely, and on examination with little authority, to ignore the guarantee of assistance of counsel spelled out in the Sixth Amendment. There is simply no satisfactory way to insure that complete denial of counsel was not prejudicial when access to counsel was absolutely forbidden during trial, even if the time involved was but 15 minutes. The Sixth Amendment guarantees "the right to the *effective* assistance of counsel." *Strickland,* 466 U.S. at 686, 104 S.Ct. at 2063 (emphasis supplied). Deprivations of counsel render assistance ineffective, for assistance simply does not exist, and therefore violation of the Sixth Amendment is clear.

To approach the question on a "strict construction" basis, we would have first to recognize that the applicable constitutional language is the Sixth Amendment guarantee of "assistance of counsel." The next thing to recognize is agreed to by the majority, namely, that there was an error in the denial of that guarantee. The person here involved for the crucial 15 minutes had *no* assistance of counsel. That should be the end of things, unless one wishes to depart from strict construction by adding that the Supreme Court has gone beyond the language of the Framers in the Sixth Amendment by expanding it to read: "*effective* assistance of counsel *at a crucial point in the proceeding.*" There can be no doubt that in this case a crucial point in the proceeding was involved. The defendant had just completed his direct examination and was going into cross-examination in a case where he was on trial for his life, the state having sought the death penalty.

Consequently, we have to concentrate at most on the implication of the word "effective." The right guaranteed by the Sixth Amendment is the right to the effective assistance of counsel. *Strickland,* 466 U.S. at 686, 104 S.Ct. at 2063 (citing *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970)).[3]

It seems inescapable that a slight imprecision would not affect the outcome in the matter before the court, but when the court refers in its opinion to some other case, there might be some trivial inexactness in use of words. The question in *McMann* was whether counsel had *incompetently* advised criminal defendants. *Effective* assistance of counsel might be construed, as a linguistic matter, to mean only help that led to a verdict or other finding of not guilty, that being the only truly effective assistance which a defendant is likely to desire. With a little more precision the Supreme Court would have said, making use of the usually scorned double negative, "the right to the *not ineffective* assistance of counsel."

Once we have come so far we understand the rationale behind *Strickland* and *Cronic.* In those cases, assistance of counsel was always provided. If counsel did something that was below professional standards, it was not ineffective simply because even the skill of Clarence Darrow would not have led to a different result. Counsel's error would have been totally harmless. In the case which concerns us here, however, there was not any assistance of counsel, so whether it was effective or ineffective is not a question which arises or can arise. The total denial of assistance of counsel violates the Constitution and that should be the end of the matter.

On the majority's approach, if the defendant was absolutely denied counsel and represented himself, according to later expert testimony, not in accordance with the cliche, as a fool, but apparently as well as any seasoned counsel could have, the defendant could not complain, for the denial

---

**3.** For our purposes, it is not significant if the addition of the word "effective" marked a departure from "strict construction." The Supreme Court has spoken and we must listen.

would be, according to the approach of the majority, lacking in prejudice. There is an old saying: *cessante ratione cessat ipsa lex.* In this case, not only do reasons cease, but reason itself is absent.

PHILLIPS and SPROUSE, JJ. authorize me to say that they join in this opinion.