John M. MUDD, Appellant,

v.

UNITED STATES of America, Appellee.

No. 85–5850.

United States Court of Appeals, District of Columbia Circuit.

Argued May 12, 1986.

Decided Aug. 22, 1986.

Gerald I. Fisher, Washington, D.C., for appellant.

Mary Ellen Abrecht, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell and Barry M. Tapp, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before MIKVA, EDWARDS and SCALIA, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

Opinion concurring in part and concurring in the judgment filed by Circuit Judge SCALIA.

MIKVA, Circuit Judge:

This appeal is the latest in a series of cases construing the Supreme Court's decision in *Geders v. United States,* 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976). The question presented is whether an order by the district court, instructing defense counsel not to speak with his client about the latter's testimony over a weekend recess, deprived defendant of his sixth amendment right to the effective assistance of counsel. If there was a violation, we then must decide whether reversal is automatically required or whether the order should be subject to a "harmless error" inquiry.

Although *Geders* did not address the precise question before us, we find its reasoning decisive. We hold that an order that denies a criminal defendant the right to consult with counsel during a substantial trial recess, even though limited to a discussion of testimony, is inconsistent with the sixth amendment of the Constitution. We also find that the harm caused by this violation is such that reversal is required without a showing of actual prejudice. We therefore reverse the defendant's conviction and remand for a new trial.

I.

In September 1984, appellant John Mudd was arrested on suspicion of receiving stolen government property, in violation of 18 U.S.C. § 641 (1982). Mudd was charged with having received several units of computer equipment which had been stolen from the U.S. Department of Agriculture. He also was charged with possession of an unregistered firearm and possession of unregistered ammunition. *See* D.C.Code § 6–2311(a) (1981) (unregistered firearm); *id.* § 6–2361(c) (1981) (unregistered ammunition).

Mudd's trial began on Wednesday, April 24, 1985. On Friday, April 26, defendant took the stand in his own defense and testified on direct examination. At the close of the day, the court called a recess until the following Monday morning, at which time cross-examination would begin.

Before adjourning the judge instructed Mudd's lawyer:

> You are not to talk to Mr. Mudd about his testimony between now and the time he undergoes his cross-examination. You can talk to him about other things, but not about his testimony.

Trial Trans. at 42 (Apr. 26, 1985). Defense counsel objected, but said that he would obey the instruction.

The jury subsequently found defendant guilty on all counts. Mudd was fined $10,-000 for receiving stolen property, $1,000 for possession of a firearm, and was placed on probation for three years. Defendant also received a one-year, concurrent probation term for possession of unregistered ammunition.

II.

Mudd's primary contention on appeal is that the order restricting his ability to consult with his lawyer denied him the effective assistance of counsel. Appellant further asserts that this type of violation requires automatic reversal, without an inquiry into whether it was prejudicial. To support his claims, Mudd relies heavily on the Supreme Court's decision in *Geders v. United States,* 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976).

Petitioner in *Geders* was a co-defendant charged with conspiracy to import and illegal importation of drugs. Geders elected to take the stand, and testified on direct examination until the end of the day when the judge called a recess. Because he was concerned that the defendant might try to alter his testimony in anticipation of cross-examination, the judge instructed defense counsel not to discuss "anything" about the case with his client during the overnight recess. He gave Geders a similar (but not identical) instruction. *Id.* at 82–83 & n. 1, 96 S.Ct. at 1332–33 & n. 1. Defendant was convicted and the Fifth Circuit affirmed, finding that even if the order deprived Geders of the assistance of counsel, reversal was not warranted absent a showing that the order caused actual preju-

dice. *United States v. Fink,* 502 F.2d 1, 8–9 (5th Cir.1974).

The Supreme Court unanimously reversed. The Court ruled that the trial judge's order deprived defendant of the "guiding hand of counsel" at a critical point in the proceeding. *Geders,* 425 U.S. at 89, 96 S.Ct. at 1335, *quoting Powell v. Alabama,* 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932). It noted that an overnight recess is often a crucial time for both defendant and counsel:

> Such recesses are often times of intensive work, with tactical decisions to be made and strategies to be reviewed. The lawyer may need to obtain from his client information made relevant by the day's testimony, or he may need to pursue inquiry along lines not fully explored earlier. At the very least, the overnight recess during trial gives the defendant a chance to discuss with counsel the significance of the day's events.

*Geders,* 425 U.S. at 88, 96 S.Ct. at 1335. Because of the overriding importance of the assistance of counsel to a criminal defendant, the Court found that the judge's order could not be upheld. *Id.* at 91, 96 S.Ct. at 1336. The conviction was reversed and the case remanded for further proceedings.

Subsequent cases have liberally construed *Geders.* Courts have extended the holding to strike down orders restricting all discussion between attorney and client during a one-hour lunch recess, *United States v. Conway,* 632 F.2d 641 (5th Cir.1980); *United States v. Bryant,* 545 F.2d 1035 (6th Cir.1976), and during brief, routine recesses in the trial day, *United States v. Allen,* 542 F.2d 630 (4th Cir.1976) (recesses lasting 20 minutes and "a minute"), *cert. denied,* 430 U.S. 908, 97 S.Ct. 1179, 51 L.Ed.2d 584 (1977). The message of these cases is clear: a trial court may not place a blanket prohibition on all attorney/client contact, no matter how brief the trial recess.

The government nevertheless argues that this case is distinguishable, because the scope of the trial court's order was significantly different. The trial judge in *Geders* told defendant not to speak with his lawyer about "anything"; in contrast, Mudd's lawyer was ordered not to discuss Mudd's *testimony* with his client, but was told that he could discuss "anything else." The government argues that *Geders* was specifically concerned about a prohibition on all attorney/client contact, and that it never reached the question of a more limited restriction. The government notes that the cases relied on by Mudd all involve blanket restrictions, and indicates that no federal court has found a violation in the situation presented here.

The government claims that the language in *Geders* shows that the Supreme Court only intended to forbid complete sequestration of defendant from counsel. In a footnote, for example, the Court said that the trial judge initially instructed defense counsel not to discuss "anything," but then later told defendant not to discuss his "testimony" with anyone. *Geders,* 425 U.S. at 85 n. 1, 96 S.Ct. at 1334 n. 1. The Court resolved this "ambiguity" by concluding that the order was intended to restrict all discussion. *Id.* The government claims that had the Court meant to prohibit restrictions such as the one imposed here, it would not have been necessary to resolve the difference between the trial judge's two orders.

In addition, the government argues that the sixth amendment interests are substantially lower when the judge's order only extends to a discussion of testimony. The government points out that Mudd was free to do things that the defendant in *Geders* was not: help counsel plot strategy and tactics, pursue leads, and discuss some of the day's events. *See id.* at 88, 96 S.Ct. at 1335. Here, says the government, the court struck a balance by ensuring that Mudd's testimony was protected from outside influence, without interfering with his right of consultation on other matters.

We cannot construe *Geders* as the government suggests. A fair reading of that opinion shows that a more limited order would not have cured the constitutional

defect. The Court recognized that if a defendant is allowed to discuss his testimony, there is a danger that counsel might improperly help his client tailor his testimony in response to the anticipated cross-examination; it said, however, that there are other ways to reduce this danger. For example, the prosecutor can cross-examine the defendant about the amount of "coaching" he received; or the judge can obviate the need for an order by refusing to call a recess until both direct and cross-examination were complete. *Id.* at 89–90, 96 S.Ct. at 1335–36. Significantly, the Supreme Court did *not* suggest that an order restricting discussion to all matters except testimony would be permissible. *See United States v. Romano*, 736 F.2d 1432, 1437 (11th Cir.1984), *vacated in part on reh'g on other grounds*, 755 F.2d 1401 (1985). The only logical implication is that the Court also meant to forbid prohibitions on attorney/defendant discussions of the defendant's testimony during a substantial recess, not just blanket prohibitions during such a recess.

While the order in this case was indeed more limited than the one in *Geders*, the interference with sixth amendment rights was not significantly diminished. Even though Mudd was free to discuss strategy and tactics, there are obvious, legitimate reasons he may have needed to consult with counsel about his upcoming cross-examination. For example, Mudd's lawyer may have wanted to warn defendant about certain questions that would raise self-incrimination concerns, or questions that could lead Mudd to mention excluded evidence. More generally, defendant may have needed advice on demeanor or speaking style, a task made more difficult if specific testimony could not be mentioned. While many of the benefits of counsel outlined by *Geders* are not related to testimony *per se*, an order such as the one in this case can have a chilling effect on cautious attorneys, who might avoid giving advice on non-testimonial matters for fear of violating the court's directive. Consultation between lawyers and clients cannot be neatly divided into discussions about "testimony" and those about "other" matters.

In short, there is no question that even a limited order such as the one here conflicts with sixth amendment rights. While concerns about improper attorney influence are legitimate (although there is no evidence of it in the case before us), *Geders* makes clear that courts may not balance the danger of altered testimony against the right to counsel:

> To the extent that conflict remains between the defendant's right to consult with his attorney during a long overnight recess in the trial, and the prosecutor's desire to cross-examine the defendant without the intervention of counsel, with the risk of improper "coaching," the conflict must, under the Sixth Amendment, be resolved in favor of the right to the assistance and guidance of counsel.

*Id.* 425 U.S. at 91, 96 S.Ct. at 1337 (citation omitted).

Finally, we note that our decision today is consistent with other circuit court decisions on this question. Contrary to the government's implication, the issue before us is not one of first impression in the federal courts. In *Romano, supra,* the Eleventh Circuit faced a similar challenge to an order prohibiting defendant from discussing his upcoming testimony with counsel during an overnight recess. Relying on many of the factors just addressed, the *Romano* court found *Geders* controlling despite the testimonial limitation on the judge's order, and found a sixth amendment violation. 736 F.2d at 1436–37; *see also Stubbs v. Bordenkircher*, 689 F.2d 1205, 1206 (4th Cir.1982) (trial court order not to discuss testimony during lunch hour held "constitutionally impermissible"), *cert. denied*, 461 U.S. 907, 103 S.Ct. 1879, 76 L.Ed.2d 810 (1983).

In short, the district judge's order violated the sixth amendment. Some courts have held, though, that a defendant waives his right if no timely objection is made. *See Stubbs*, 689 F.2d at 1207; *Bailey v. Redman*, 657 F.2d 21, 24 (3d Cir.1981), *cert. denied*, 454 U.S. 1153, 102 S.Ct. 1024,

71 L.Ed.2d 310 (1982); *Allen,* 542 F.2d at 634. This matter is discussed *infra;* first, however, we address the effect of the violation on the disposition of this appeal.

■ Having found a violation, we next consider whether reversal is required *per se,* or whether we should subject the violation to a harmless error analysis. The government argues that even if there was a violation, this court should reverse only if "there is a reasonable possibility that the error contributed to the verdict against appellant." Brief for Appellee at 12, *citing Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

We find that a *per se* rule best vindicates the right to the effective assistance of counsel. To require a showing of prejudice would not only burden one of the fundamental rights enjoyed by the accused, *see Powell,* 287 U.S. at 68–69, 53 S.Ct. at 64, but also would create an unacceptable risk of infringing on the attorney-client privilege. *See Redman,* 657 F.2d at 24. The only way that a defendant could show prejudice would be to present evidence of what he and counsel discussed, what they were prevented from discussing, and how the order altered the preparation of his defense. Presumably the government would then be free to question defendant and counsel about the discussion that *did* take place, to see if defendant nevertheless received adequate assistance.

We cannot accept a rule whereby private discussions between counsel and client could be exposed in order to let the government show that the accused's sixth amendment rights were not violated. This court has stated:

> As the common law has long recognized, the right to confer with counsel would be hollow if those consulting counsel could not speak freely about their legal problems.... Limitations on the attorney-client privilege have therefore been drawn narrowly, to remove the privilege only where the privileged relationship is abused.

*Martin v. Lauer,* 686 F.2d 24, 32 (D.C.Cir. 1982) (footnotes omitted). Having already

been subjected to an improper judicial order, it would be anomalous if defendant was also forced to relinquish the right to have his discussions with his lawyer kept confidential.

A *per se* rule is also more consistent with *Geders.* While the majority opinion did not explicitly discuss the issue, the Court never inquired whether defendant Geders had been prejudiced by the judge's instructions. It necessarily rejected the holding of the Fifth Circuit, which had held that reversal was not justified unless there was a showing of "actual harm." *Fink,* 502 F.2d at 9. Given that the question was squarely presented, it is unreasonable to assume that the Supreme Court *sub silentio* subjected the violation to a harmless error test. *See Geders,* 425 U.S. at 92, 96 S.Ct. at 1337 ("a defendant who claims that an order prohibiting communication with his lawyer impinges upon his Sixth Amendment right to counsel need not make a preliminary showing of prejudice") (Marshall, J., concurring).

We note that our reading of *Geders* is consistent with later Supreme Court understanding. In *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), the Court cited *Geders* as an example of where it had "found constitutional error without any showing of prejudice...." *Id.* at 659 n. 25, 104 S.Ct. at 2047 n. 25. Based on both the policy concerns and our reading of *Geders,* we conclude that Mudd is not required to show actual prejudice to his right to consult with counsel; it is enough to show that the district court restricted that right. *See Glasser v. United States,* 315 U.S. 60, 76, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942) ("The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial.").

The cases cited by the government are not to the contrary. The government claims that the recent decision in *Delaware v. Van Arsdall,* — U.S. —, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986), stands for the

proposition that a harmless error test is required before reversing a conviction for a sixth amendment violation. This argument is far too broad—*Van Arsdall* involved a violation of the confrontation clause, not the right to counsel clause of the sixth amendment. Nothing in that case suggested that all sixth amendment infringements should be subject to a similar inquiry; to the contrary, the Court said:

> we have observed that some constitutional errors—such as denying a defendant the assistance of counsel at trial ...— are so fundamental and pervasive that they require reversal without regard to the facts or circumstances of the particular case.

*Id.* at 1437 (citation omitted).

For similar reasons we are unpersuaded by the government's citation to *United States v. Kelly*, 790 F.2d 130 (D.C.Cir. 1986). There we were confronted by allegations that the government had interfered with the defendant's right to counsel by permitting one of its agents to steal documents from defense counsel. While the panel stated that sixth amendment violations were normally subject to a harmless error test, *id.* at 139 n. 6, it also recognized that "[i]n some cases, the court's inquiry will end once the constitutional violation is established." *Id.* at 138 n. 6. Given that *Kelly* involved a specific and unique type of violation—the disruption of attorney/client deliberations by covert government action—and did not address the type of violation present in this case, the government's reliance on it is misplaced.

Nor is our conclusion altered by the substantial division among the circuits on the question whether a "harmless error" rule should be applied to orders that unconstitutionally restrict attorney/defendant consultations. *Compare United States v. DiLapi*, 651 F.2d 140, 148 (2d Cir.1981) (apparently applying an "actual prejudice" standard), *cert. denied*, 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1982), *and Redman*, 657 F.2d at 24 (requiring defendant to show that he was "deprived" of right to counsel), *with Conway*, 632 F.2d at 644–45 (5th Cir.),

*and Bryant*, 545 F.2d at 1036 (6th Cir.) (apparently applying a *per se* reversal rule). Those circuits that have applied a harmless error analysis seem to have done so in part because of their belief that it is unlikely that a defendant would be prejudiced by a nonconsultation order during a brief recess. *See, e.g., DiLapi*, 651 F.2d at 148 (five minute recess). Although we share this belief, we think that, for the reasons we have already indicated, case-by-case inquiry into the harmlessness of nonconsultation orders is highly undesirable. It seems to us the difficulty is better met by acknowledging that where an order restricting the discussion of testimony is imposed during a very brief recess the likelihood of prejudice is so small as to be essentially nonexistent, and thus no sixth amendment violation occurs. *Cf. Kelly*, 790 F.2d at 138 n. 6 ("[S]ome type of prejudice is an element of [a sixth amendment] claim itself.") (citing *Delaware v. Van Arsdall*, —— U.S. ——, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)).

We thus do not find that *all* orders restricting the discussion of testimony constitute a violation, no matter what their duration; unlike blanket prohibitions, these more limited orders only interfere with the right to counsel when they cover a substantial trial recess. When these sixth amendment violations occur, however, we agree with those circuits that have applied a *per se* reversal rule. We recognize that the boundaries of orders forbidding discussion of just testimony will at times be hard to define. *See supra* page 1512. We therefore also agree with those circuits that require the defense counsel to make a timely objection to the order, *see, e.g., Redman*, 657 F.2d at 24, to ensure that the judge narrowly limits its scope, and to ensure that its use is restricted to insignificant trial recesses. Because the recess at issue in this case was substantial, the district court's order prohibiting the defendant from discussing his testimony with counsel during the recess violated the sixth amendment and was *per se* reversible error.

### III.

In his brief, Mudd claims that the trial judge committed other errors that compel reversal. Because one of these alleged errors could re-occur at a new trial, we pause briefly to discuss it.

Appellant asserts that the district court judge gave improper jury instructions. Defense counsel asked the judge to instruct the jury that, in order to convict Mudd for receiving stolen property, the jury must find that defendant knew the computers were stolen at the time he *took possession* of them. The judge refused, and told the jury that it was sufficient if Mudd received *or retained* the equipment with the knowledge that it was stolen. Trial Trans. at 719. The judge's position is clearly correct. Mudd was indicted for violating 18 U.S.C. § 641, which states that a person is guilty if he "receives, conceals, *or* retains" anything of value which belongs to the United States, knowing that the object is stolen (emphasis added). Although Mudd was indicted for "receiving, concealing, *and* retaining" stolen property, his argument that he therefore cannot properly be convicted unless all three acts are proven is meritless. *See Joyce v. United States*, 454 F.2d 971, 976–77 (D.C.Cir.1971), *cert. denied*, 405 U.S. 969, 92 S.Ct. 1188, 31 L.Ed.2d 242 (1972).

### CONCLUSION

The trial court's order, which prevented Mudd from discussing his testimony with his lawyer during a weekend recess, deprived defendant of the effective assistance of counsel. We therefore reverse and remand for further proceedings consistent with this opinion.

*It is so ordered.*

SCALIA, Circuit Judge, concurring in part and concurring in the judgment.

I agree with the majority that the District Court's order prohibiting defendant from discussing his testimony with his attorney during a weekend recess was not significantly less invasive of sixth amendment rights than the order prohibiting all contact between a defendant and his attorney during an overnight recess in *Geders v. United States*, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976). I therefore join in the majority's holdings that a prohibition on attorney-defendant discussion during substantial recesses, even if limited to discussion of testimony, violates the sixth amendment and that, like the similar violation at issue in *Geders*, it constitutes *per se* reversible error.

Emulating the narrow approach taken by the *Geders* Court, which held only that total prohibitions of attorney-defendant contact during overnight recesses violated the sixth amendment, declining to address "limitations imposed in other circumstances," *Geders*, 425 U.S. at 91, 96 S.Ct. at 1336, I do not reach the issues discussed in the majority opinion not presented by the facts of this case—in particular, the rule of law applicable to total or partial bans on attorney-defendant discussion during brief recesses. I therefore concur in part and concur in the judgment.