UNITED STATES of America

v.

Afolabi K. ENIOLA, Appellant.

UNITED STATES of America

v.

Tony D. BAMJI a/k/a Olusenhinde B. Adeyankinnu, Appellant.

Nos. 88–3070, 88–3077.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 15, 1989.

Decided Jan. 26, 1990.

Paul M. Weiss, Freehold, N.J., appointed by the Court, for appellant Eniola in No. 88–3070.

Steven M. Buckman *, Washington, D.C., was on the brief for appellant Eniola. Afolabi Eniola was on the reply brief, pro se.

G. Godwin Oyewole, Alexandria, Va., appointed by the court, for appellant Bamji in No. 88–3077.

John R. Fisher, Asst. U.S. Atty., San Francisco, Cal., for appellee. Jay B. Stephens, U.S. Atty., Washington, D.C., and Su Zann Lamb, Asst. U.S. Atty., were on the brief for appellee in Nos. 88–3070 and 88–3077.

Before: MIKVA, SILBERMAN and BUCKLEY, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

Appellants in this consolidated action appeal their criminal convictions on procedural grounds. Both appellants charge that their sixth amendment right to effective assistance of counsel was violated by the trial court's order barring defense counsel from discussing the substance of two sealed bench conferences with the defendants. As to individual claims, appellant Eniola challenges the trial court's denial of his two motions to sever and his two motions for acquittal. Eniola also claims that the security measures used in the courtroom undermined his presumption of innocence and that the trial judge erred in admitting the testimony of one of the government's chief witnesses. Appellant Bamji challenges the validity of a missing witness instruction and the trial court's decision to allow the prosecution to recross-examine a defendant without a redirect examination.

■ The record shows that the trial court prohibited all defense counsel from advising their respective clients that one of the potential witnesses was a government informant. Because this directive inhibited appellant Bamji's ability to develop a defense of entrapment, we find that his right to effective assistance of counsel was undermined. We therefore reverse and remand appellant Bamji's case on this ground. Appellant Eniola's sixth amendment claim fails because he did not present an arguable scenario in which the government informant could have played a role in entrapping him. Therefore, Eniola's inability to confer with his counsel on the role of the informant is of no constitutional signifi-

* Appointed Counsel at the time the brief was filed.

cance. We find no merit to any of the other claims raised by the appellants.

## I. Background

This case involves an undercover operation in which one Detective Hairston of the District of Columbia Police Department arranged to purchase heroin from the appellants. Pursuant to a tip from an informant, Hairston met with appellant Bamji who offered to sell him a kilo of heroin. After various negotiations with Bamji as to price and quantity, Hairston arranged the buy and the appellants, along with three other persons, were arrested.

Trial testimony revealed that the apartment where appellant Bamji first met Detective Hairston belonged to a woman who was present at the time. Bench conferences also revealed that the defense was unable to locate this woman but that the government had access to her. Appellant Bamji requested a "missing witness" instruction to the jury, which the trial court gave; when Bamji complained about the form of the instruction, the court repeated and clarified the instruction to the jury.

On two separate occasions, appellant Eniola motioned to sever his case from that of the other defendants. The trial court denied both motions, as well as two separate motions for acquittal made by Eniola.

During the trial, two sealed bench conferences were held before closing argument. The court ordered all defense counsel not to discuss the conferences with their clients. The jury found Bamji guilty of all six counts of the indictment: conspiracy to violate controlled substance laws, distribution, possession with intent to distribute, and three counts of use of a telephone to commit drug violations. Eniola was convicted of conspiracy to possess with intent to distribute. This appeal followed.

## II. Analysis

A. *The Effect of the Protective Order on Appellants' Right to Effective Assistance of Counsel*

Appellants contend that they were denied their sixth amendment right to effective assistance of counsel when the district court forbade all counsel from discussing with their clients two bench conferences the transcripts of which were placed under seal. Bamji raised this argument in his brief, and counsel for Eniola joined in on this claim at oral argument. Although we generally will not entertain an argument that has not been raised in an appellant's opening brief, *see McBride v. Merrell Dow and Pharmaceuticals, Inc.*, 800 F.2d 1208, 1210 (D.C.Cir.1986), in this consolidated appeal no unfairness results from our reaching Eniola's claim as the government had ample opportunity to respond to the argument which was raised in Bamji's brief.

The focus of both bench conferences was a potential witness' status as a government informant. The transcripts of the two sealed conferences and the objections raised later in the trial reveal that the trial court's protective order barred all defense counsel from discussing with their clients not only the woman's ongoing status as a police informant, but also her past status and role as an informant at the time of the drug transaction. During the bench conferences, counsel for Bamji specifically raised his intention to attempt to develop a defense of entrapment. The evidence established that the initial meeting between Bamji and Detective Hairston took place in the woman's apartment and that she had played a role in bringing about this meeting. The court concluded that it would not allow discussion of the potential witness' relationship with the police unless defense counsel proffered some specific evidence, beyond mere phone calls, to show that Bamji had been induced by the woman to enter the drug transaction with Detective Hairston.

Relevant portions of the colloquy are as follows:

> MR. OYEWOLE: ... After the [initial contact between the informant and Bamji] we will present evidence here that [the informant] and some other people continued to look for Tony Bamji to go ahead and procure the heroin.
>
> Our defense in this case, your honor, is entrapment. Unless you can connect the

person who started the entrapment, we would be prejudiced.

\*   \*   \*   \*   \*   \*

THE COURT: All right. Fine....

Come back at 2:00 o'clock, and you can put your witness on, and don't delve into it. *You don't delve into any relationship between [the informant] and the police department unless you establish in some fashion on your own that this man was overreached by somebody.* I don't have any evidence at all that he was overreached.

\*   \*   \*   \*   \*   \*

Unless you present some evidence which indicates that you were overreached, you don't talk about any relationship between anybody and the police department ...

(Emphasis added.) The court applied this protective order to all defense counsel. At no time during the trial did counsel for Eniola attempt to explain to the trial court how and whether he might attempt to show that Eniola was entrapped. The only objection to the protective order raised by Eniola's counsel concerned the difficulty it created for him in explaining trial procedures to his client.

MR. BUCKMAN: ... Before lunch you indicated— ... that discussion at the bench before lunch, it was something that we could not discuss with our clients—I just want to put on the record that I have a problem with that because I find it difficult to be able to adequately counsel my client as to his rights in this matter without being able to tell him specifically what has been going on in the last hour.

It is very difficult for counsel to explain to a defendant and to tell him what needs to be done and not done with regard to instructions and closings and to explain what the missing witness instruction is all about in not being able to explain to him our discussion at the bench.

And I renew my request to be able to have that opportunity to explain to my client our bench discussion.

THE COURT: I still admonish you not to do it.

Appellants argue that the court's order impaired their ability to prepare a defense of entrapment. In *Mudd v. United States*, 798 F.2d 1509 (D.C.Cir.1986), this court held that a court order forbidding counsel to confer with his client during a weekend recess regarding the defendant's interrupted testimony was a *per se* violation of the sixth amendment, without regard to prejudice. *See also Geders v. United States*, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976) (blanket order during an overnight recess forbidding discussion with client on any subject violated sixth amendment right to effective assistance of counsel). The government argues that neither *Mudd* nor *Geders* addressed a conflict between the right to effective assistance of counsel and the privilege of police informants to shield their identity. Instead, the government relies on *Roviaro v. United States*, 353 U.S. 53, 60–61, 77 S.Ct. 623, 627–28, 1 L.Ed.2d 639 (1957), in which the Supreme Court held that the informant's privilege must give way when disclosure of the information "is relevant and helpful to the defense of an accused." Most of the federal cases involving this limitation on the scope of the informant's privilege have arisen where the legality of a search without a warrant is in issue and the communications of an informant are claimed to have established probable cause. 353 U.S. at 61, 77 S.Ct. at 628. The *Roviaro* Court concluded:

We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders non-disclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

*Id.* at 62, 77 S.Ct. at 628–29.

In arguing that the informant's testimonial privilege should override the sixth

amendment concerns implicated in this case, the government relies on several cases of our sister circuits which sanction the use of *in camera* proceedings in applying the *Roviaro* balancing test. In those cases the reviewing court recognized that the trial judge needed to conduct an *in camera* interview of the informant in order to determine whether the informant's knowledge or role in the criminal transaction was relevant or helpful to the establishment of an asserted defense. Where such relevancy was not established, the trial judge was held not to have abused his discretion in denying disclosure. *See, e.g., United States v. De Los Santos*, 810 F.2d 1326 (5th Cir.1987). In the absence of a showing of relevancy, the Ninth Circuit has also held that the use of an *in camera* hearing, to which defense counsel *but not the defendant* was admitted, did not violate the defendant's sixth amendment right of confrontation. *See United States v. Anderson*, 509 F.2d 724, 730 (9th Cir.1974).

Similarly, the government asserts that the trial court in the instant case correctly precluded discussion of the known potential witness' status as an informant. In essence, the government reasons that because the woman's name, address, and role as an individual were known to counsel and the defendants, appellants were not precluded from pursuing a trial strategy which would demonstrate to the trial judge the materiality of the fact that the potential witness was an informant. This reasoning ignores the rationale underlying the sixth amendment right to effective assistance of counsel. Unlike the cases offered by the government, which focused on the relevancy of the informant's role and potential testimony, in this case the trial court's protective order did not preclude defendants from calling the witness (assuming they could have found her). Instead, the protective order impinged directly on defense counsel's ability to *confer* with the client on a critical aspect of the defense. As the First Circuit has observed, "utmost candor between an attorney and client is essential to effective assistance of counsel." *Greater Newburyport Clamshell Alliance v. Public Service Commission of New Hampshire*, 838 F.2d 13, 21 (1st Cir.1988). Therefore, the sixth amendment protects the defendant against intrusions that could inhibit the free exchange of information between attorney and client. While we recognize that this sixth amendment value will not always trump the informant's privilege, where defense counsel has presented an arguable scenario for entrapment, his ability to pursue this course cannot be hemmed in by the privilege. As the *Mudd* court counseled, appellants need not show prejudice to establish a violation of the right to effective assistance of counsel.

As noted, nothing in the record suggests an arguable scenario by which the informant may have played a role in entrapping appellant Eniola. In his closing argument, Eniola's counsel stressed that Eniola did not enter the conspiracy until the morning of the drug transaction, five days after Bamji initially met Detective Hairston. Any actions by the informant to "get Bamji kicking" took place before Eniola got involved in the conspiracy. Bamji, however, had direct contacts with the informant.

By precluding any discussion with appellant Bamji of the potential witness' role as an informant at the start of the conspiracy, the trial court directly inhibited defense counsel from discussing strategy and tactics for developing an entrapment defense. The fact that the protective order was limited to the woman's relationship with the police does not diminish the sixth amendment problem. *See Mudd*, 798 F.2d at 1512 ("[A]n order [limited to certain subjects] can have a chilling effect on cautious attorneys, who might avoid [discussion on non-restricted] matters for fear of violating the court's directive."). In any event, the woman's status as an informant at the time of the conspiracy with which appellants were charged was the gravamen of an entrapment defense. We therefore conclude that the district court committed reversible error by not allowing discussion between appellant Bamji and his counsel on the potential witness' status as a government informant.

Our ruling does not create an automatic override of the informant's privilege whenever the defense raises the specter of an entrapment defense. We reach solely the question of when a client and attorney have a constitutionally protected right to confer on the role of an individual as an informant for the police. If, for example, an informant had merely provided a tip to the police without any further involvement in the criminal transaction, the defendant would not have a colorable argument that the informant acted as an agent for the government. *Cf. United States v. Gonzales*, 606 F.2d 70, 75 (5th Cir.1979) (citing similar reasoning as a factor against disclosure under the *Roviaro* test). Likewise if there were unequivocal evidence in the record showing a defendant's independent predisposition and willingness to pursue a criminal undertaking, the sixth amendment would not be implicated by a protective order restricting discussion with the client of an informant's role in the transaction. Similar to the doctrine governing motions for summary judgment, to rule out any sixth amendment concern the evidence of predisposition to commit a crime would have to be unequivocal. Otherwise, where a defendant has presented an arguable scenario for entrapment, the sixth amendment counsels that he should not be inhibited from exploring this possibility with his attorney. *Mudd*, 798 F.2d at 1512; *see also Gonzales*, 606 F.2d at 76 (no disclosure of informant's identity warranted under *Roviaro* where the record was "replete with evidence demonstrating appellants' predisposition and willingness to engage in heroin trafficking"). Although we have borrowed reasoning applied in the *Roviaro* disclosure context, we feel such reasoning has similar implications for discerning when the sixth amendment warrants disclosure of an informant's role to the client. The tests are different, however, because *Roviaro* is a balancing standard while the sixth amendment either is or is not implicated. The essence of the sixth amendment threshold is whether defense counsel has demonstrated that the entrapment defense has legitimate potential such that he is entitled freely to discuss strategies with

his client for attempting to prove the defense. A defendant cannot claim a sixth amendment override of the informant's privilege where the record clearly demonstrates, either through independent predisposition or restricted informant involvement, that the informant had no role in bringing a defendant into the criminal endeavor.

In Bamji's case we are satisfied that defense counsel raised a legitimate potential defense of entrapment that entitled him to explore this possibility—at least with his client—without the inhibition that might have been caused by the protective order. The informant not only tipped the officer, but the initial meeting between Detective Hairston and Bamji took place in her home while she was present. Although the record is not clear on the specifics of the informant's role in bringing about this meeting, her role was not so limited as to eliminate the possibility that she acted as an agent.

■ The right to discuss a matter with the defendant, however, does not necessarily include the right to probe into the matter during testimony. The test of whether such information should be disclosed in open court is governed by the *Roviaro* balancing test, which looks to the degree of an informant's involvement in the criminal transaction and the ability of an informant's potential testimony to aid in establishing an asserted defense. *See, e.g., De Los Santos*, 810 F.2d at 1332. Given the informant's more than minimal involvement at the start of the conspiracy at issue in this case, some testimony would seem to have been in order. We note, however, that her *current* relationship with the police, if any, has no bearing on the development of an entrapment defense. In addition, had the government demonstrated that the informant would in fact be endangered by disclosure of her relationship with the police, the trial court could have taken steps to assure her safety while accommodating the defendant's sixth amendment rights. No such showing of danger was ever made in this case.

## B. *Eniola's Severance Claim*

▮ Appellant Eniola argues that the trial court erred in denying his motions to sever entered before and during the trial. This court has aptly summarized the law on motions to sever:

> The general rule is that the decision to grant a severance is within the sound discretion of the trial judge, whose judgment will not be reviewed absent a clear abuse of discretion.... [This court has] create[d] a presumption that persons jointly indicted should be tried together.... [C]ases are to be severed where necessary to insure a fair trial. Where the essential fairness of a trial is not impaired by a refusal to sever, the incremental burden of duplicating a complex trial or reproducing elusive evidence is a proper consideration in the decision to deny severance.

*United States v. Bridgeman,* 523 F.2d 1099, 1107 (D.C.Cir.), *cert. denied,* 425 U.S. 961, 96 S.Ct. 1743, 48 L.Ed.2d 206 (1976). "The critical determination [on review of severance rulings] is whether a jury could reasonably compartmentalize the evidence introduced against each individual defendant." *United States v. Hernandez,* 780 F.2d 113, 119 (D.C.Cir.1986) (citations omitted). We conclude that the court's denial of both motions to sever should not be disturbed.

## C. *Eniola's Motion for Acquittal*

▮ When reviewing a district court's denial of a motion for judgment of acquittal, this court "must determine, whether, viewing the evidence most favorably to the government and according the government the benefit of all legitimate inferences therefrom, a reasonable juror *must necessarily* have had a reasonable doubt as to the defendants' guilt." *United States v. Weisz,* 718 F.2d 413, 437 (D.C.Cir.), *cert. denied,* 465 U.S. 1027, 104 S.Ct. 1285, 79 L.Ed.2d 688 (1984). We conclude that there was sufficient evidence of Eniola's involvement such that it was proper to submit his indictment to the jury.

## D. *Eniola's Other Arguments*

▮ In his *pro se* briefs, Eniola charges that the security measures in the courtroom undermined his presumption of innocence and that the trial judge erred in allowing Mr. William Harrison's testimony to be admitted. Because the objection regarding admissibility of Harrison's testimony was not raised below, we conclude that this objection has been waived. *See United States v. Johnson,* 802 F.2d 1459, 1465 (D.C.Cir.1986).

▮ As to the security measures, during the trial two of the four codefendants, Bamji and one Alex Shoga, were denied bail after the court determined that their presence could not otherwise be ensured. As a result, two U.S. marshals were stationed in the courtroom behind Bamji and Shoga, purportedly to prevent their flight. When these two defendants took the stand they were escorted by a marshal who stood to the side of the stand during their testimony. The other marshal took a position on the opposite wall to the side of the judge. No marshal was assigned to attend appellant Eniola. We do not believe that these measures undermined appellant Eniola's presumption of innocence or prejudiced in any way his right to a fair trial. *See Dorman v. United States,* 435 F.2d 385, 398 (D.C.Cir.1970) (en banc).

## E. *Bamji's Claim Regarding Prosecution's Recross Without a Redirect*

▮ At trial, during Bamji's cross-examination by counsel for a codefendant, a new issue arose which had not been covered during direct examination. The court gave all counsel an opportunity to ask further questions. Only the prosecution requested leave to "recross just briefly." The privilege of recross-examination as to matters not covered on redirect examination lies within the trial court's discretion. FED.R. CIV.P. 611(b). The reviewing court will disturb such decisions only for abuse of discretion. *See Geders v. United States,* 425 U.S. 80, 86, 96 S.Ct. 1330, 1334, 47 L.Ed.2d 592 (1976). In this instance, important new evidence helpful to the prosecution's case arose during cross by the codefendants, creating legitimate reasons for allowing the prosecution to explore this evidence.

Defense counsel cannot now complain that this exploration was outside the scope of direct examination when he had every opportunity to redirect. We conclude that the district court did not abuse its discretion.

### F. *Bamji's Argument on the Missing Witness Instruction*

■ Equally unmeritorious is Bamji's claim that the district court gave an inadequate missing witness instruction so as to warrant reversal of his conviction. On review of the transcripts, we have no doubt that the trial court unequivocally articulated to the jury that the potential witness in question was "peculiarly available" to the government, i.e., more available to the government than to the defendants. The jury had heard a substantial amount of testimony that the potential witness occupied the apartment in which Detective Hairston first received a sample of heroin from Bamji and that she was present at the time. Defense counsel, in their closing arguments, emphasized this person's absence as a witness, noting the government's failure to produce her to explain how the conspiracy started. The instruction was sufficiently clear to permit the jury, if it so chose, to draw an inference against the government for the witness' absence.

### III. CONCLUSION

We affirm the district court on all issues raised on appeal with the exception of the protective order restricting discussion of the sealed bench conferences. As to the protective order, we remand only appellant Bamji's case for the reasons stated. On remand, the district court must allow defense counsel to probe with Bamji the potential witness' role as an informant at the time of the drug conspiracy. The sixth amendment to the Constitution does not allow an attorney to be walled off from his client when acting in defense of the client's liberty.

*It is so ordered.*