Augusto ODONE, Plaintiff,

v.

**CRODA INTERNATIONAL PLC., Defendant.**

Civil Action No. 94–2808 (RMU/PJA).

United States District Court, District of Columbia.

Jan. 15, 1997.

Bruce Alexander McDonald, Washington, DC, for Plaintiff.

Walter Donald Ames, Washington, DC, Thomas Pavelko, for Defendant.

## MEMORANDUM ORDER

ATTRIDGE, United States Magistrate Judge.

### Background

Pending is a motion [# 27] filed on September 18, 1996, by the defendant, Croda International, for sanctions against the plaintiff, Mr. Augusto Odone, for conduct at his August 29, 1996, deposition. The plaintiff filed an opposition on September 23, 1996, and the defendant filed a reply on October 4, 1996. Also pending are three motions to compel—one by the plaintiff and two by the defendant; those motions, oppositions, replies and exhibits and the entire record are considered in the Order.

### Analysis

■ The motion involves a dispute over a conversation that took place between the plaintiff and his attorney, Robert L. Kelly, during a recess of defendant's deposition of the plaintiff on August 29, 1996. The defendant argues that such private conversations are prohibited, and that the conversation led to the reversal of the plaintiff's pre-recess testimony. Defendant also asserts that the plaintiff and his attorney cannot assert attorney-client privilege when questioned as to the content of their private conversation during that recess, and asks that the pre-recess testimony be regarded as an admission by the plaintiff.

Prior to the recess, the defendant was questioning the plaintiff regarding U.S. Patent No. 5,331,009, which is the subject of the instant action. The plaintiff seeks to be named sole or joint inventor of this patent. [Def's mot. at 1]. The defendant asserts that the purpose of eliciting the deposition testimony in question was to determine whether Mr. Odone claimed to be a sole or joint inventor of all or only some of the claims of the '009 patent. [Def's mot. at 2].

The plaintiff's attorney does not deny that he and his client consulted during the five-minute recess that was called by the defendant, but he does deny that he engaged in prohibited "coaching" of his client. [Pl's opp. at 2]. The plaintiff's attorney asserts that his discussion led to the rehabilitation of his client during his cross examination of Mr. Odone, who was confused between ratios and percentages on the document he received during the deposition. [Pl's opp. at 2]. He asserts that his duty as a lawyer required him to rehabilitate his client. [Pl's opp. at 2; Def's mot., exh. B, at 15–17]. The plaintiff asserts that the instant motion was filed to intimidate Mr. Odone, and seeks costs and attorneys fees associated with opposing the motion.

This Court as well as the litigants are instructed by the FED.R.CIV.P. 30 with regard to the taking of depositions; subsections (c) and (d) provide in pertinent part:

(c) * * * Examination and cross-examination of witnesses may proceed as permitted at the trial * * * All objections made at the time of the examination to the qualifications of the officer taking the deposition, to the manner of taking it, to the evidence presented, to the conduct of any party, or to any other aspect of the proceedings shall be noted by the officer upon the record of the deposition; but the examination shall proceed, with the testimony being taken subject to objections.

*   *   *   *   *   *

(d) * * * (1) Any objection to evidence during a deposition shall be stated concisely and in a non-argumentative and non-suggestive manner. A party may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation on evidence directed by the court, or to present a motion under paragraph (3).

The Advisory Committee Notes to the 1993 Amendments suggest that subsection (c) is "aimed at reducing the number of interruptions during depositions;" and that subsection (d) is addressing the fact that "[d]epositions frequently have been unduly prolonged, if not unfairly frustrated, by lengthy objections and colloquy, often suggesting how the deponent should respond ... [and that] [d]irections to a deponent not to answer a question can be even more disruptive than objections." FED.R.CIV.P. 30 advisory committee's note. *See also Frazier v. Southeastern Pa. Transp. Auth.,* 161 F.R.D. 309, 314–315 (E.D.Pa.1995); *Dravo Corp. v. Liberty Mutual Ins. Co.,* 164 F.R.D. 70, 74–75 (D.Neb. 1995).

Pursuant to Rule 30(c), examination and cross examination of witnesses during depositions should proceed as it does at trial, *Damaj v. Farmers Ins. Co., Inc.,* 164 F.R.D. 559, 560 (N.D.Okl.1995); thus, in resolving the instant dispute,. this Court must turn to the dearth of cases addressing the issue of an individual's Fifth Amendment right to counsel in civil proceedings. It appears this Court has never specifically addressed the issue of attorney-client conversations during recesses of civil litigation or deposition testimony, nor has it addressed the extent of an individual's constitutional right to counsel in civil litigation.[1] In *Potashnick v. Port City Constr. Co.,* 609 F.2d 1101 (5th Cir.1980), however, the Fifth Circuit analogized the landmark criminal decision of *Geders v. United States,* 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976)[2], to the civil litigation context holding "that a civil litigant has a constitutional right to retain hired counsel ... [and that the Judge's] rule prohibiting a

---

1. The Court's research finds only one instance, *Webb v. Hyman,* 861 F.Supp. 1094, 1113 (D.D.C. 1994), where it had the opportunity to specifically address attorney-client conversations during a trial recess between direct and cross-examination. Without specifically addressing the conversation between the counsel and witness, the Court looked at the surrounding circumstances, including the defendant's opportunity to impeach the witness' credibility, and declined to strike the witness' testimony.

2. The Supreme Court in *Geders v. United States,* 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976), held that in a criminal trial "an order preventing petitioner from consulting his counsel 'about anything' during a 17–hour overnight recess between his direct- and cross-examination impinged upon his right to the assistance of counsel guaranteed by the Sixth Amendment." *Id.* at 91, 96 S.Ct. at 1337. The Court declined to "deal with limitations imposed in other circumstances." *Id.*

litigant from consulting with his attorney during breaks and recesses in the litigant's testimony impinges upon that right." *Id.* at 1118–1119. Four years later in *Aiello v. Wilmington,* 623 F.2d 845 (3d Cir.1980), the Third Circuit reviewed a court's directive prohibiting counsel from communicating with the plaintiff during breaks in his cross examination. The *Aiello* court did not address the extension of the *Geders* rule to civil litigation, but in determining whether the directive precluded consultation between the attorney and client regarding intermittent expert witnesses on his behalf, the court noted that the trial court permitted discussion *after* cross-examination by the opposing party—*prior to* redirect by party's own counsel; thus it distinguished attorney-client consults prior to an attorney eliciting testimony from his own client from discussions prior to or during the examination by the opposing party. *See Id.* at 859.

In the instant action, the consultation did not take place prior to or during cross examination by the opposing party, but instead prior to cross examination by the plaintiff's own attorney. The plaintiff was under oath both during direct examination and cross examination. Moreover, the discussion was not a private consult requested by the plaintiff or his attorney in the midst of the defense counsel's direct questioning of the plaintiff. It does appear that the defendant continued with its direct questioning following the recess, but that it had concluded that line of questioning prior to the recess, and that it was the defense attorney who requested the recess. [Def's mot., exh. B].

The Court finds it significant that the plaintiff's attorney, during the direct examination of the plaintiff by the opposing party, made no attempt to obstruct the deposition nor to object in a manner as to suggest answers to the plaintiff.[3] Plaintiff's counsel made an objection as to the plaintiff's competency to answer the questions, [Def's mot., exh. B, at 5], but permitted defense counsel to pursue his chosen line of questioning without interruption from the plaintiff's counsel. Objections to competency, as well as the objections made during redirect asserting attorney-client privilege, are permitted pursuant to Fed.R.Civ.P. 30.

The defendant's motion for sanctions relies entirely on *Hall v. Clifton Precision,* 150 F.R.D. 525 (E.D.Pa.1993) and its progeny in the Eastern District of Pennsylvania.[4] The ultimate goal of the *Hall* decision was to facilitate the truth-finding process by providing for the witness—*and only the witness,* to respond to the opposing counsel's questions without coaching from the counsel. *Hall,* a case that is distinguishable on its facts to the instant action[5], is instructive, but this District has not adopted nor is it bound by the litany of deposition restrictions and prohibitions it outlines. *See also Damaj v. Farmers Ins. Co., Inc.,* 164 F.R.D. 559, 561 (N.D.Okla. 1995) ("declining to impose the "full range" of *Hall* restrictions"). Further, the holding in *Hall* that "a lawyer and a client do not have an absolute right to confer during the course of the client's deposition", 150 F.R.D. at 528, does not place a blanket prohibition on such conferences—it simply means there is not *an absolute right.*

3. It is well settled that in the course of a deposition, an attorney is prohibited from engaging in so-called *Rambo* litigation, in which he attacks every question posed by the opposing counsel thus preventing the elicitation of any meaningful testimony from the witness. The attorney also may not object to questions in such a way as to "coach" the witness or suggest an answer. *See American Directory Service Agency, Inc. v. Beam,* 131 F.R.D. 15, 18–19 (D.D.C.1990).

4. Plaintiff cites *Frazier v. Southeastern Pa. Transp. Auth.,* 161 F.R.D. 309, 314 (E.D.Pa.1995) and *Applied Telematics, Inc. v. Sprint Corp.,* 1995 WL 79237 (E.D.Pa.1995) (unreported) as well as *Armstrong v. Hussmann Co.,* 163 F.R.D. 299 (E.D.Mo.1995), all of which involve an attorney

suggesting answers or otherwise interfering during direct examination by the opposing party during a deposition; thus all are distinguished on their facts from the instant dispute.

5. The issue in *Hall* was whether an attorney is permitted to initiate a private consult with his client regarding a document prior to his client answering questions, not whether they may consult during a recess between direct and cross examination, as in the instant discovery dispute. Although the plaintiff was provided with the document by opposing counsel during the course of his deposition testimony, the plaintiff's attorney did not request a recess or private moment during which to discuss the document prior to the questioning by the opposing counsel.

Certainly, in retrospect, it would have been preferable for the plaintiff's attorney to ascertain on the record whether his client misinterpreted a document. The Court, however, cannot penalize an attorney for utilizing a five-minute recess that he did not request to learn whether his client misunderstood or misinterpreted the questions and then for attempting to rehabilitate his client on the record.[6] An attorney has an ethical duty to prepare a witness. *See Christy v. Pennsylvania Turnpike Comm'n*, 160 F.R.D. 51, 53 (E.D.Pa.1995) (discussing *Hall v. Clifton*, 150 F.R.D. 525 (E.D.Pa.1993)) ("[*Hall*] severely restricts the communications that can take place between witnesses and their counsel during a deposition, but does not limit in any way communications between witnesses and counsel prior to deposition.").

Defense counsel had an opportunity, without requesting privileged attorney-client information, to redirect on the questions earlier asked for which the defendant argues the plaintiff's response took a "180–degree turn", but the defendant did not seize that opportunity. [Def's mot., exh. B]. *See also supra* n. 1.

Furthermore, the plaintiff was under oath during both direct and cross examination and his attorney is an officer of the Court; the Court, therefore, must accept their assertions that inappropriate "coaching" did not take occur during the course of the five-minute recess. If lawyers are concerned about attorney-client conversations during depositions recesses, recesses between direct and cross examination should be avoided.

Defendant's request, therefore, that the plaintiff's statements as to claims 4, 8, 9 and 10 of the '0009 patent be regarded as admissions that he is not the sole or co-inventor is denied. The plaintiff has not admitted that he is not the sole or co-inventor. To the extent that the plaintiff's conflicting deposition testimony would lead a jury to that conclusion is for the defendant to establish during the trial.

As to the defendant's request that it be allowed to redepose the plaintiff at the plaintiff's expense regarding the conversation between the plaintiff and his attorney during the recess; the request is denied. The court is not persuaded by the footnote in *Hall* that suggests the attorney-client privilege is waived. First, the circumstances of the instant case are quite different from *Hall* (*see supra* n 5.); second, this Court is further instructed by *Mudd v. United States*, 798 F.2d 1509 (D.C.Cir.1986), a criminal case in which this Circuit held that "[c]onsultation between lawyers and clients cannot be neatly divided into discussions about 'testimony' and those about 'other' matters." *Id.* at 1512. Although *Mudd* was a criminal prosecution, the underlying reasoning for the Court's admonition is analogous in a civil context: Waiving the attorney-client privilege could have a "chilling effect on cautious attorneys, who might avoid giving advice on non-testimonial matters for fear of violating the court's directive." As the Fifth Circuit stated in *Potashnick*, "notwithstanding the civil-criminal dichotomy, an analogy can be drawn between the criminal and civil litigants' respective rights to counsel. In both cases the litigant usually lacks the skill and knowledge to adequately prepare his case, and he requires the guiding hand of counsel at every step in the proceeding against him." 609 F.2d at 1108; *see also Hall*, 150 F.R.D. at 528, 529 n. 7 (An attorney "has the right, if not the duty, to prepare a client for deposition.") Moreover, this Court is instructed by this Circuit's decision in the civil appeal of *Martin v. Lauer*, 686 F.2d 24 (D.C.Cir.1982), which was relied on by the *Mudd* Court:

> [W]hile private parties must ordinarily pay their own legal fees, they have an undeniable right to retain counsel to ascertain their legal rights. *See Potashnick v. Port City Constr. Co.*, 609 F.2d 1101, 1117–19 (5th Cir.), *cert. denied*, 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 * * * (1980). Restrictions on speech between attorneys and their clients directly undermine the ability

---

**6.** The defendant stressed in its October 10, 1996, supplemental motion to compel full production that the plaintiff is likely to misinterpret the English language: "... plaintiff, August Odone, who was born in Italy and appears not to have a

complete mastery of the English language ... Unfortunately, Mr. Odone is not an attorney ..." [def's supp. mot. to compel discovery at 1–2; *see also* def's supp. mot., at 6, 8].

of attorneys to offer sound legal advice. As the common law has long recognized, the right to confer with counsel would be hollow if those consulting counsel could not speak freely about their legal problems. Through the attorney-client privilege, the common law 'encourage(s) full and frank discussions between attorneys and their clients and thereby promote(s) broader public interests in the observance of law and the administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends on the lawyer being fully informed by the client.' *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 * * * (1981). Limitations on the attorney-client privilege have therefore been drawn narrowly, to remove the privilege only where the privileged relationship is abused. Absent such abuse, or a waiver of the privilege, our legal system jealously protects the confidential status of attorney-client communications.

686 F.2d at 32–33 (footnotes omitted) (addressing a district court order and opinion upholding agency restrictions on the plaintiff employees' abilities to communicate with their counsel in another suit). Nothing in the record convinces this Court that the plaintiff and his attorney abused the attorney-client privilege; therefore, the defendant's motion for sanctions and to redepose the plaintiff regarding the content of his discussion with his attorney is denied.

Finally, the Court is troubled by the tit-for-tat tactics of this litigation, and encourages the litigants to use a rule of reason and professional courtesy in responding to the opposing party's requests.

### ORDER

Upon consideration of the motion for sanctions, the opposition and the entire record, it is this 15 day of January 1997:

**ORDERED** that the defendant's motion for sanctions for the plaintiff's and his attorney's conduct at the August 29, 1996, deposition shall be, and hereby is, **denied;**

**FURTHER ORDERED** that the defendant's motion that the plaintiff's statements should be deemed admissions shall be, and hereby is, **denied;**

**FURTHER ORDERED** that the defendant's motion to redepose the plaintiff regarding his discussions with his attorney during the five-minute recess shall be, and hereby is, **denied;** and

**FURTHER ORDERED** that the parties shall bear their own costs in the bringing and opposing this motion.